**Harry GUNTHER, Appellant,**

**v.**

**Joann Lee GUNTHER, Appellee.**

**No. 594.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

March 22, 1972.

Rehearing Denied April 12, 1972.

Robert C. Floyd, Butler, Binion, Rice, Cook & Knapp, Houston, for appellant.

Jack R. Bailey, Houston, for appellee.

BARRON, Justice.

This is a habeas corpus action filed by Joann Lee Gunther of San Diego, California seeking care and custody of four small children, Rick M. Gunther, Jeffrey C. Gunther, Janette M. Gunther and Sonny M. Gunther, their ages ranging from about ten years to about four years. The children were in the custody of their father, Edmund Harry Gunther, residing in Harris County at the time of trial and are still in his care and custody.

Suit was filed in Domestic Relations Court No. 4 of Harris County, Texas. The court, on application of Mrs. Gunther, had the children placed with the Probation Department, Juvenile Division, of Harris County until further orders of the court. After an extended trial on the merits without a jury, the trial court awarded the permanent care, custody and control of the above children to their mother, Mrs. Joann Gunther, but permitted supersedeas, and the children were released to the custody of the father, Harry Gunther, pending appeal. Specific visitation rights were granted pending appeal to the mother. Appeal is by Harry Gunther, as appellant, assigning 21 Points of Error.

Needless to say, this case has a complicated and unfortunate background so far as the four children are concerned. In early 1968, Harry Gunther and his wife, Joann Lee Gunther, separated, and she filed suit for divorce in the Superior Court of California for the County of San Diego. Interlocutory judgment of divorce was entered on January 8, 1969. On May 15, 1969, by stipulation and agreement of the parties, the care and custody of the children above were awarded to the father, Harry Gunther, with reasonable visitation rights reserved to the mother. After May 15, 1969, an extended and lengthy investigation was made by a California Probation Officer under the direction of the court, and such officer after outlining all facts obtained, recommended that the care and custody of the children be permanently awarded to the father, Harry Gunther, with right of reasonable visitation granted to the mother, Joan Gunther. Apparently the final decree of divorce was entered and signed on May 20, 1969. Mrs. Gunther became dissatisfied about September, 1969 with the custody arrangement and filed a motion to set aside the temporary custody order of May 15, 1969 above and sought custody of the children for herself. On February 24, 1970, the California court denied Mrs. Gunther's motion for change of custody, denied her motion to amend the order so as to grant custody to her, but the interlocutory judgment of divorce of January 8, 1969, and the final judgments thereupon entered were amended to grant Mrs. Gunther specific visitation rights at various times with her children. Both parties were restrained by the California court from removing the children from the state of California without written consent of the other, "except that if the respondent (father) is assigned within the course of his government duties to another residence, he shall appear before the Court for an Order, with proper notice to the petitioner (mother), as to the children accompanying him." On March 27, 1970, Harry Gunther appeared in court personally only in answer to Mrs. Gunther's motion to show cause why he should not be held in contempt for refusal to deliver the children to her for Easter vacation as directed. The court held the father in contempt and assessed a $100.00 fine, which was suspended on the father's compliance with the order. No application again to change custody

appears in the record in the above order to show cause.

While the record is not clear, thereafter Mrs. Gunther had another petition for change of custody consolidated with the above show cause motion of March 27, 1970, the latter order appearing to be disposed of on that date for all practical purposes. Mrs. Gunther's alleged change of custody petition apparently filed after the contempt hearing, if filed at all, was set for April 20, 1970, was thereafter continued to July 16, 1970, and thereafter continued to August 13, 1970. This petition was apparently filed only a short time after the court had acted on custody on February 24, 1970. Pursuant thereto, and in the absence of Harry Gunther with apparently no notice to him, actual or constructive, another judge on August 18, 1970, completely reversed the custody arrangement and "modified" the interlocutory judgment of January 8, 1969, and the subsequent court orders of May 15, 1969, and February 24, 1970. In this connection Harry Gunther testified that he never received any type of notice from the California court or from anyone else after the March 27, 1970 hearing, and that he left California with his present wife and the children in April, 1970, (appellee admits between March 27, 1970, and April 20, 1970) and took a job at Casa Grande, Arizona with the U. S. Naval Civil Service. His leaving of California about that time is not disputed. Mrs. Gunther testified that Judge Wilkey (the later judge who awarded custody to Mrs. Gunther) issued a bench warrant for Mr. Gunther and "by that time Harry was already gone." This occurred in May of 1970. An attempt was made to prove notice by mail pertaining to the August 18, 1970 hearing, by affidavit of Mrs. Gunther's attorney, but this procedure being clearly hearsay and not specifically relevant in any event, the Texas trial court refused to permit its introduction. We do not believe the record contains any evidence of a motion or application on the part of Mrs. Gunther for change of custody which was received by Mr. Gunther by personal citation, mail, publication, or by any other method. Nor do we think the record supports any finding that notice of the time and place of hearing was ever given to him by authority of the court or by the parties in California, or that he had any knowledge thereof even though the absence of such notice might be considered to be appellant's fault by reason of his move from California.

The testimony shows that appellant "sold out" in California in April of 1970. He married his present wife, Ava, on April 30, 1969. He never told appellee where he was located, even though the California trial court had restrained him from removing the children out of the state of California. He paid bills through another person. He denied that he knew the whereabouts of appellee, though it is apparent that he did not want her to know his and the children's whereabouts. Appellant had someone in Germany send a letter to a Mr. Olson in California, Mr. Olson being acquainted with Mr. and Mrs. Gunther, falsely written from Germany by Mr. Gunther, stating that he had left the United States and had returned to his native country with the children. In September of 1969 when Mrs. Gunther repudiated her agreement concerning custody, she testified that Mr. Gunther had offered her $2,000.00 if she would never try to regain custody of the children. Appellant lived in Arizona from May until July, 1970. He moved to Texas in July and lived for short times in Burton and Brenham and later moved to Houston and Spring, Texas near Houston. He is now employed in Houston for Thermotics Corporation as an electrical design engineer. He has placed his children in the public schools near his home, and the children seem to be doing reasonably well in school and are seemingly happy. Appellant's neighbors, who had known him for only a short time, testified that he was a good man and each spoke highly of him and of his affection for the children. His salary is now about $1,000.00 per month. He is a good worker and his employer recommended him highly.

Mrs. Gunther, appellee, testified that the original custody agreement in May of 1969 was a "trick" played upon her by appellant, and that she signed the agreement because she hoped he would come back to her and that they could eventually straighten up their lives. This, of course, was prior to the above order and prior to the order of February 24, 1970. She testified that appellant whipped her and physically was violent toward her in 1968 and 1969, again before the order of February, 1970. In 1969 he caused the children to dislike or to hate her. Her children lived with her until April, 1969, when she signed the custody agreement above referred to. The Probation Officer had originally recommended in 1968 that the parents have joint legal custody; that their physical custody should be in the mother with the father's liberal visitation rights recognized and enforced. She testified that appellant was "tricky", was not sincere and was devoted solely to himself. She testified further that he "mistreats" the children, and that he has a violent, drunken temper, though there is no evidence of such from reports or from the children. She testified further that she had been trying to find her children for about seven months, and that she finally found them by employing private detectives who, in some manner, intercepted mail which eventually revealed the children's whereabouts. One of the detectives testified that the Gunther home in Spring was not good, was in disarray and was a veritable "pigsty". This was explained by appellant, who stated that various types of furniture and fixtures in his home could not be used because of the doctor's warning that they might aggravate an allergy suffered by two of the children. Neighbors stated that the home was good and the children were well taken care of. The detective stated also that appellant reported to the school authorities that he could not give his specific address because (as reported) appellant was an ex-FBI man and did not want his children to be harassed. The latter is purely hearsay.

Mr. Gunther, appellant, testified that his ex-wife was beset with emotional problems and had suicidal tendencies, and that she could not handle the responsibilities of four small children. He denied most of the charges made above by appellee. He stated that she did not prepare proper food for the children and did not take proper care of them. Mr. Gunther testified that his ex-wife shot at him when he was in his automobile while their case was pending in California, and that she told him that she would not miss the next time. The record shows that Mrs. Gunther was employed in California by Brown Cadillac Co., that Mr. Brown had given her a leave of absence to straighten out her personal life, and when that was done she could come back. She stated that she had an adequate home for her children in California—a three-bedroom house with a kitchen, living room and a large play area near a school. Her present income or source thereof is not revealed by the record, though she stated that she had spent more than $1,000.00 on detectives in trying to locate her children since they left California. From the record, it seems apparent that appellant's present wife, Ava, loves the children as well as her one child who lives with them, and is cooperating to try to make a good home for all the children in Texas. The facts in this case are unusual and present the trial court, as well as this Court, with many nebulous and disquieting problems.

At appellant's request, the trial court made and filed findings of fact and conclusions of law. The court found as a fact that the California court awarded custody of the children to appellee on August 18, 1970; that appellant violated the court's order of February 24, 1970, by removing the children from California; that appellant deliberately concealed the whereabouts of the children from their mother; that Joann Lee Gunther, the mother, is entitled to the custody of said children by virtue of the order of August 18, 1970, above mentioned, and that the court at that time had jurisdiction of the parties and the children;

that the California court found the mother to be the fit person for custody and further found that the best interests and welfare of the children would be served by granting her custody. The Harris County Court found that the best interests and welfare of the children would be served by awarding the sole care, custody and control of the children to Joann Lee Gunther and would not be served by awarding such custody to Edmund Harry Gunther. The trial court concluded that Joann Lee Gunther is the fit and proper person for custody, that the father is not the fit person, and that the children's best interests and welfare will best be served by granting custody to the mother and not to the father. The findings and conclusions were objected to and request was made for findings concerning the actions and orders of the California court above outlined generally, the main request being that the Superior Court of California did not have jurisdiction of appellant and the children on August 18, 1970, and that such order was not entitled to full faith and credit under the Constitution of the United States or the State of Texas. The requested findings and conclusions were denied by the trial court.

■ A habeas corpus suit of this kind is in reality a civil suit involving custody with the parents as adverse parties, and the powers of the court to adjudicate custody and visitation are automatically invoked. See Fletcher v. Fletcher, 404 S.W. 2d 866, 867–868 (Tex.Civ.App.—Corpus Christi 1966, no writ) and cases cited. And we recognize the respected rule that in this type of case the trial court's judgment in determining the best interests of the children and in awarding their custody and visitation in accordance with such de-

termination should be reversed only when it appears from the record as a whole that the trial court has erred and abused its discretion under the circumstances. Mumma v. Aguirre, 364 S.W.2d 220, 222 (Tex.Sup.1963); Herrera v. Herrera, 409 S.W.2d 395, 396 (Tex.Sup.1966) and cases cited. The technical rules of pleadings in such a case as this are of little importance and will usually be relaxed to give the court effective judicial control over the children involved. Leithold v. Plass, 413 S.W.2d 698, 701 (Tex.Sup.1967).

■ At the outset we note that the provisions of Rule 184a, Tex.R.Civ.P., pertaining generally to judicial notice of the laws of other states, was never pleaded or invoked.[1] The parties did, however, introduce into evidence properly authenticated copies of various California orders and judgments, and under such circumstances we shall presume that a court of a sister state of general jurisdiction had jurisdiction over the cause and the parties unless and until such jurisdiction is disproved by extrinsic evidence or by the record. Liddell v. Blevins, 244 S.W.2d 335 (Tex.Civ.App.—San Antonio 1951, writ ref'd n. r. e.); Rule 55, Tex.R.Civ.P. The parties here, however, offered nothing to the trial court to shed light upon the divorce and custody laws of the State of California, offered no statutes, procedural or otherwise, to the court and failed to offer anything whatsoever to aid the court in the proper interpretation and application of California law. If Rule 184a had been invoked, it would have become the court's duty to comply with the Rule. Therefore, in the absence of a need to comply with the Rule, we shall presume that relevant California law is the same as Texas law. See Ogletree v. Crates, 363 S.W.2d 431,

---

1. Rule 184a. "The judge upon the motion of either party shall take judicial notice of the common law, public statutes, and court decisions of every other state, territory, or jurisdiction of the United States. Any party requesting that judicial notice be taken of such matter shall furnish the judge sufficient informa- tion to enable him properly to comply with the request, and shall give each adverse party such notice, if any, as the judge may deem necessary, to enable the adverse party fairly to prepare to meet the request. The rulings of the judge on such matters shall be subject to review."

435 (Tex.Sup.1963); Milner v. Schaefer, 211 S.W.2d 600, 603 (Tex.Civ.App.—San Antonio 1948, writ ref'd); Gevinson v. Manhattan Construction Co. of Okl., 449 S.W.2d 458, 465 (Tex.Sup.1969). Our courts do not take judicial notice of the laws of other states, and if relied upon they must be alleged or proved as required by our rules and laws. See Ogg v. Ogg, 165 S.W. 912 (Tex.Civ.App.—San Antonio 1914, no writ); 19 Baylor L.Rev. 112, 113.

■ Texas courts under Art. IV, Sec. 1 of the Constitution of the United States and statutes enacted pursuant thereto, are required to give full faith and credit to valid final judgments of sister states. However, we believe it is now clear that a Texas court may examine the facts to determine whether or not the California court (or any court of a sister state) did in fact have jurisdiction to enter the decree of which full faith and credit is sought. Williams v. North Carolina, 325 U.S. 226, 233 et seq., 65 S.Ct. 1092, 89 L.Ed. 1577. (1944); Burleson v. Burleson, 419 S.W.2d 412, 415 (Tex.Civ.App.—Houston (14th Dist.) 1967, no writ); Spitzmiller v. Spitzmiller, 429 S.W.2d 557, 560 (Tex.Civ. App.—Houston (1st Dist.) 1968, writ ref'd n. r. e.). As we have indicated above, we do not believe the evidence shows physical presence of appellant and the children in the State of California after April of 1970, or that their residence and domicile were anywhere in California at that time. Mrs. Gunther's petition or application to change custody of the children is not shown to have existed on March 27, 1970, the last time Mr. Gunther made an appearance in a California court, such appearance being made in a contempt hearing dealing with visitation of the mother, the only other subject referred to in the order of the court. Custody was not mentioned, and there is no evidence anywhere in the record that Mrs. Gunther was then seeking (only 32 days after the court had awarded custody to Mr. Gunther) a new or another hearing on the permanent care and custody of the children. There is no evidence that Mr. Gunther ever received any citation or notice of any kind, actual or constructive, of a proceeding or suit permanently to change the custody of the children. And we do not believe that jurisdiction of the person of Mr. Gunther was obtained by reason of his prior appearances in California courts on divorce and other custody hearings. Applying the law of Texas, which we must do by reason of the above matters discussed, a suit to relitigate and readjudicate the custody of minor children on the ground of changed conditions is a new and independent action which does not involve the retrial of the original action, and such suit is governed by the Texas law of venue. The trial court does not merely alter or modify its original custody action. See Lakey v. McCarroll, 134 Tex. 191, 134 S.W.2d 1016, 1020 (1940); 27B C.J.S. Divorce § 317(1)d., p. 535 (1957). Lakey has been consistently followed in Texas. Boney v. Boney, 458 S.W.2d 907, 911 (Tex.Sup.1970). Due service of citation is required in such new and independent action. Castleberry v. Castleberry, 134 Tex. 409, 135 S.W.2d 701 (Tex.Comm'n App.—1940, opinion adopted). And regardless of the motives of appellant, who left the State of California with the children without authority, we believe that a parent's right to custody of his or her children is a personal right requiring personal service and jurisdiction in personam. See May v. Anderson, 345 U.S. 528, 533–534, 73 S.Ct. 840, 97 L.Ed. 1221 (1952). And see Armstrong v. Armstrong, 350 U.S. 568, 576–577, 76 S.Ct. 629, 100 L.Ed. 705 (1955); Vanderbilt v. Vanderbilt, 354 U.S. 416, 418–419, 77 S.Ct. 1360, 1 L.Ed.2d 1456 (1957); Estin v. Estin, 334 U. S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948); see also Goldsmith v. Salkey, 131 Tex. 139, 112 S.W.2d 165, 168–169 (Tex.Comm'n App.—1938, opinion adopted); Spitzmiller v. Spitzmiller, 429 S.W.2d p. 560, supra; Milner v. Gatlin, 261 S.W. 1003 (Tex. Comm'n App.—1924, holding approved). In Milner it was held that a custody judgment against a non-resident parent was void. The

case has been criticized in other respects in Wicks v. Cox, 146 Tex. 489, 208 S.W.2d 876, 877 (1948) which will be mentioned below, but we think the case continues to be authority for the point upon which it is now cited. See also Ex parte Birmingham, 150 Tex. 595, 244 S.W.2d 977, 979–980 (1952); Maxwell v. Maxwell, 204 S.W.2d 32, 36 (Tex.Civ.App.—Amarillo 1947, writ ref'd n. r. e.); Cunningham v. Cunningham, 166 Ohio St. 203, 141 N.E.2d 172 (1957); Henthorn v. Tyler, 266 S.W.2d 484 (Tex.Civ.App.—Amarillo 1953, no writ); DeLaughter v. DeLaughter, 370 S.W.2d 207 (Tex.Civ.App.—Texarkana 1963, writ ref'd n. r. e.); Fletcher v. Fletcher, 404 S.W.2d 866 (Tex.Civ.App.—Corpus Christi 1966, no writ); Peacock v. Bradshaw, 145 Tex. 68, 194 S.W.2d 551, 554 (1946); Davis v. Davis, 68 Cal.2d 290, 66 Cal.Rptr. 14, 437 P.2d 502, 507 (1968, concurring op.); 27B C.J.S. Divorce § 317 (1)d, p. 536 (1959). Many other cases could be cited.

 While we do not approve of any violation of the California court's orders, appellant's action in leaving that state with his children, punishable by contempt in California, should not influence our decision on this specific question. See Ex parte Birmingham, supra, 244 S.W.2d p. 980 and cases cited. An award of custody should never be made in order to punish a parent but only to protect the best interests of the children involved. Anderson v. Martin, 257 S.W. 347, 353 (Tex.Civ.App.—Amarillo 1953, writ ref'd n. r. e.); Maxwell v. Maxwell, 204 S.W.2d p. 36, supra; Meyer v. Meyer, 361 S.W.2d 935, 941 (Tex.Civ.App.—Austin 1962, writ dism'd). It is possible, however, that such action as taken by Mr. Gunther under some circumstances might bear upon his fitness as a custodian. Our courts do not normally concern themselves with the "righteousness" of claims to custody. Their paramount concern is with the best interests of the children. Mumma v. Aguirre, 364 S.W.2d 220, 221 (Tex.Sup. 1963).

 Concerning the validity of the California order of August 18, 1970, we recognize that there is divided authority or apparent divided authority on this question in Texas. In the present case, however, no notice at all was given to appellant regarding the August 18, 1970 order and no constructive service was shown by publication or otherwise. The conflicting cases differ to some extent. See and compare, contra, Bull v. Wilson, 362 S.W.2d 662 (Tex.Civ.App.—San Antonio 1962, no writ); Dowden v. Fischer, 338 S.W.2d 534 (Tex.Civ.App.—Waco 1960, no writ). We hold that the California judgment changing custody of the children here is void for want of jurisdiction. Appellant had lawful custody of the children by reason of the order of February 24, 1970 and prior orders. The trial court erred in its finding that appellee is entitled to custody by virtue of the August 18, 1970 order of the California court changing custody, and it erred in holding that such court had jurisdiction of the parties and the involved children at the latter time. See also Annotation, Divorce Decrees and Full Faith and Credit-Supreme Court cases, 14 L.Ed.2d 917, Sec. 3, pp. 920–922 (1966); Leflar, The Law of Conflict of Laws, Sec. 180, p. 346, Bobbs-Merrill, (1959); Restatement, Conflict of Laws, Secs. 117, 145–146 (1934).

 Regarding the remaining and controlling aspect of this case, it is settled that jurisdiction of Texas courts to determine custody does not necessarily depend on the children's domicile in Texas. Campbell v. Stover, 101 Tex. 82, 104 S.W. 1047, 1048 (1907). The physical presence in Texas before a Texas court of the children and of the contesting parties, and the general situation affecting the ability of the court to form an intelligent judgment on what will be best for the children's welfare are of paramount importance. Goldsmith v. Salkey, supra, 112 S.W.2d p. 169; Worden v. Worden, 148 Tex. 356, 224 S.W.2d 187, 190 (1949). But the courts of Texas will give full faith and credit to a valid child custody decree of a sister state and

will not order a change of custody in the absence of competent proof of a subsequent material change of conditions—here subsequent to the order of February 24, 1970 awarding custody of the involved children to appellant, Harry Gunther. See Bukovich v. Bukovich, 399 S.W.2d 528, 529 (Tex. Sup.1966); Wicks v. Cox, supra; Knowles v. Grimes, 437 S.W.2d 816 (Tex.Sup.1969). Material changes of conditions and the best interests of the children are the real and genuine tests. Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787, 790 (1955); Mumma v. Aguirre, supra, 364 S.W.2d p. 221. And, of course, a final judgment in a custody proceeding is res judicata of the best interests of minor children as to conditions then existing. Ogletree v. Crates, supra; Knowles v. Grimes, supra. Therefore, it is settled that proof of materially changed conditions since the entry of a valid decree of a sister state will support in Texas a change of custody if the evidence shows that such would be for the best interests of the children involved and present before the court. Bukovich v. Bukovich, supra, 399 S.W.2d p. 529; People of State of New York ex rel. Halvey v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1948). The burden of proof to show changed conditions as above is on the appellee. There must be a change in conditions such that, in the interest of the children, their custody should be changed. The one exception to the rule regarding res judicata stated above is that the introduction of evidence of a parent's conduct previous to the prior valid custody decree of the California court on February 24, 1970 is permitted, provided such evidence tends to corroborate the evidence of subsequent conduct of a like nature. Wilson v. Elliott, 96 Tex. 472, 73 S.W. 946, 947 (1903); Pennington v. Pennington, 195 S.W.2d 677 (Tex.Civ. App.—Texarkana 1946, no writ).

The evidence in this record, if given credibility, which the trial court apparently did, is replete with acts of misconduct on the part of appellant. Appellee testified that appellant tricked her into signing the custody papers in May, 1969 under a promise that he would in some manner take care of her. She testified that he was not sincere and was interested only in himself and his own welfare. He carried out his insincere purposes by immediately remarrying and by taking all the children covertly and without the knowledge of either the courts or the mother, to Arizona in April and to Texas in July, 1970, all of this in direct violation of the valid orders of the Superior Court of California. It is clear that he was trying to hide himself and the children particularly from their mother. Location of her children took from seven months to about a year after an expenditure on the mother's part of more than $1,000.00 She, as apparently did appellant, loved her children, and it is difficult fully to imagine the anxiety and distress caused appellee by not knowing even her children's whereabouts, their welfare, or anything else about them for such a length of time. The findings of the trial court that Mr. Gunther deliberately concealed the whereabouts of the children from their mother, Joann Lee Gunther, and supporting findings are well proven by the testimony. The trial court concluded from the evidence relative to changed circumstances that Harry Gunther was not a fit and proper person to be awarded custody, and it found and concluded that the best interest and welfare of the children would be served by awarding their sole care, custody and control to the mother, Joann Lee Gunther. Wide discretion is granted the trial judge in this type of case because of his opportunity to observe and evaluate in person the parties involved. His actions will not be disturbed in the absence of an abuse of discretion. For the welfare of the children, it is certainly necessary that children know, love, and be with each of their parents. See Furrer v. Furrer, 267 S.W.2d 226 (Tex.Civ.App.—Austin 1954, no writ). Changed conditions may exist in many and varied forms. See Fisher v. Montgomery, 274 S.W.2d 858, 861 (Tex.

Civ.App.—Austin 1955, writ ref'd n. r. e.) ; 33 Tex.L.Rev. 260 (1954). We hold that the deliberate secreting of the children by the father from the mother for the length of time here involved warrants the trial court's actions in changing custody, care and control to the mother, with visitation at reasonable times and places by appellant, Harry Gunther.

For the above reasons stated, the judgment of the trial court is affirmed.