Janet L. LAYTON, Appellant,

v.

Gary A. LAYTON, Appellee.

No. 15450.

Court of Civil Appeals of Texas,
San Antonio.

Jan. 14, 1976.

Opinion On the Merits May 12, 1976.

As Modified by Opinion On Denial of
Rehearing June 9, 1976.

Brock Huffman, Luther Rutherford, San Antonio, for appellant.

Tanner & Falkow, Inc., Christopher C. Beller, San Antonio, for appellee.

PER CURIAM.

Appellant, Janet L. Layton, filed this suit in a district court of Bexar County to enforce a judgment, rendered by a court of the State of Maryland, awarding her recovery in the sum of $6,640.18, representing unpaid installments of alimony and child support which her former husband, appellee, Gary A. Layton, had been ordered to pay by a prior decree of a Maryland court. Appellant here complains of the refusal of the Texas court to enforce such judgment.

The trial court failed to file findings of fact and conclusions of law, although appellant complied with the requirements of Rules 296 and 297, Tex.R.Civ.P.

The rule in this state has been that a failure of the trial court to file findings of fact and conclusions of law where the requesting party has complied with the applicable rules constitutes reversible error, unless the record before the appellate court affirmatively reflects that the complaining party has suffered no injury. *Wagner v. Riske,* 142 Tex. 337, 178 S.W.2d 117 (1944). No court reporter was present during the trial of this case and we are without the benefit of a statement of facts. Under these circumstances, we cannot hold that appellant has not been injured. *Cooper v.*

*Sullivan,* 455 S.W.2d 958 (Tex.Civ.App.—El Paso 1970, no writ).

However, since the omission may be corrected by the judge of the trial court, we conclude that, instead of reversing the judgment, the proper order is one merely directing the trial court to file its findings of fact and conclusions of law so that we may proceed as if such findings and conclusions had been timely filed. Rule 434, Tex. R.Civ.P.; 4 McDonald, Texas Civil Practice § 16.08.1, pp. 20–21 (1971 rev.).

Such findings and conclusions shall be certified to this Court no later than February 20, 1976.

If the trial judge finds it impossible to make such findings of fact or conclusions of law because of absence of a statement of facts, passage of time, defects of memory or other causes, then it shall certify that fact to this Court no later than February 20, 1976.

## ON THE MERITS

CADENA, Justice.

Appellant, Janet L. Layton, plaintiff below, complains of the judgment of a district court of Bexar County, Texas, refusing to enforce a judgment of a Maryland court that she recover from her former husband, appellee, Gary A. Layton, the sum of $8,233.68, representing past due installments of alimony and child support ($6,640.18) which appellee had been ordered to pay by a prior decree of the Maryland court, plus attorney's fees in the amount of $1,500.00 and court costs in the sum of $93.50.

The principal question before us is whether Article IV, Sec. 1 of the United States Constitution, which commands that full faith and credit be given in each state to the judicial proceedings of every other state, requires that a Texas court enforce the Maryland judgment for arrearages in alimony and child support, when both such judgment and the prior child support and alimony decree on which it is based were rendered by the Maryland court after a Texas court had rendered judgment, in a

suit filed by appellee husband in Bexar County, dissolving the marriage between appellant and appellee, dividing the property of the parties, awarding custody of the parties' two minor children to appellant, and ordering appellee to make periodic payments toward the support of such children.

The parties were married in the State of Virginia. Thereafter, because of appellee's military service, the parties lived in several states before coming to Texas, where appellee had been assigned to duty, in 1971. After they had been in Texas some months, they finally separated, and appellant established her residence with the children in Baltimore County, Maryland. Appellee remained in Texas at his then post, Lackland Air Force Base, in Bexar County.

Appellee filed his suit for divorce in Bexar County on April 27, 1972. His petition alleged· that appellant and the children were residents of Maryland. After out-of-state notice was personally served on her in Maryland, appellant entered a special appearance challenging the jurisdiction of the Texas court. Her objection to jurisdiction was overruled, and she filed no further pleadings in the Texas case. The decree of divorce entered by the Texas court on October 3, 1972, recites that, other than her unsuccessful challenge to the jurisdiction of the Texas court, appellant failed to enter her appearance in the Texas case, either in person or by attorney, and "wholly made default."

Prior to the time that she was served with notice of the Texas divorce suit, appellant filed her petition in the circuit court for the City of Baltimore, Maryland, seeking a divorce a mensa et thoro, custody of the minor children, child support, and alimony. On November 22, 1972, after the Texas divorce decree had been rendered and had become final, appellant filed her amended or supplemental complaint in the Maryland court, seeking the same relief as that sought in her original complaint, except that in this amended pleading she sought a divorce a vinculo, rather than a divorce a mensa et thoro.

In answer to this amended or supplemental complaint, appellee filed "preliminary objections" in the Maryland court. In this pleading appellee asked that the "service of summons returned by the Sheriff of Baltimore City as to the Supplemental Bill of Complaint and Show Cause Order appended thereto" be quashed "on the grounds of *lack of jurisdiction over the person* " of appellee "and insufficiency or illegality of service of process." (Emphasis added.)

In his "preliminary objections" appellee alleged (1) that he was a resident of Texas; (2) that while he was temporarily in the City of Baltimore, Maryland for the purpose of visiting his sick grandmother, a deputy sheriff served the summons in question on appellee's father, rather than on appellee; and (3) that the divorce proceedings in Texas, in which Janet had participated, and the divorce degree entered by the Texas court were "determinative . . of all issues of alimony, support, custody and property."

Appellee's preliminary objections were overruled by order entered by the Maryland court on January 22, 1973. This order recites that the Maryland court had acquired in personam jurisdiction over appellee. Appellee filed no further pleadings in the Maryland case.

On August 1, 1973, the Maryland court entered a "Decree of Permanent Alimony And Other Relief." This decree recited that the Maryland court had "acquired *in personam* jurisdiction over . . . Gary A. Layton;" and that the court was satisfied that "all allegations as to the acts of . . . abandonment committed by" appellee had been proved by "clear and convincing evidence." After a recital to the effect that the Maryland court had "reviewed and considered" the prior Texas divorce decree, there follows language (1) awarding custody of the minor children to appellant; (2) ordering appellee to pay, as child support, the sum of $51.92 per week, per child; (3) awarding appellant, as permanent alimony, the sum of $57.69 per week; (4) ordering appellee to· pay all arrearages in child support payments,

amounting, as of the date of this decree, to $2,509.61; (5) ordering appellee to pay arrearages in alimony pendente lite in the total amount of $1,384.56; and (6) ordering appellee to pay $1,500.00 to appellant's attorney as attorney's fees.

Appellee did not appeal from this decree.

On November 23, 1973, in the same cause as that in which the August 1, 1973 decree was entered, appellant filed her petition seeking a determination of "alimony and support arrearages" and praying that the court reduce the amounts so determined to a money judgment. It was in response to this petition that the judgment, which appellant now seeks to enforce in Texas, was rendered. This judgment, entered January 3, 1974, recites appellee had personal notice of appellee's petition and that in personam jurisdiction had been acquired over appellee by the Maryland court.

There is no showing that any of the orders, decrees or judgments rendered by the Maryland court have been set aside or modified, and appellee does not suggest that such orders, decrees or judgments are not final.

The case now before us was filed by appellant in Bexar County, Texas, seeking enforcement of the money judgment rendered by the Maryland court on January 3, 1974. In his answer to such suit appellee, in addition to special exceptions not here relevant and a general denial, made the following allegations: (1) Appellant appeared in the Texas divorce case for the purpose of challenging the jurisdiction of the Texas court. (2) After her challenge to the jurisdiction was overruled, the case was set for trial on the merits but, although appellant was notified of such setting, she failed to appear at the hearing and the divorce decree was rendered by the Texas court. (3) Thereafter, appellant, "flaunting the jurisdiction of" the Texas court, "proceeded to obtain subsequent divorce decree in the State of Maryland, which decree she now seeks to enforce." (4) "Thus, by reason of these facts, [appellant] is estopped from enforcing said Maryland decree, which is subsequent in time to the Texas decree. . . ."

Nowhere in appellee's pleadings is there any language suggesting that the Maryland court lacked jurisdiction over the subject matter or the person of appellee. It should also be pointed out that the Maryland court did not enter a "divorce decree."

■ One of the reasons given by the trial court in support of its refusal to enforce the Maryland decree is that "Texas does not recognize permanent alimony as this is against the public policy of Texas."[1] It is true that the award of permanent alimony following the dissolution of a marriage is against the public policy of this State. *Francis v. Francis*, 412 S.W.2d 29, 32 (Tex. 1967). But this is irrelevant. Where unpaid installments of alimony due under the decree of a court of a sister state have been reduced to judgment by the same court which rendered the alimony decree, such judgment is entitled to full faith and credit in Texas. *Rumpf v. Rumpf*, 150 Tex. 475, 242 S.W.2d 416 (1951).

We are not here concerned with the theory of "divisible divorce," which views the marital relationship as consisting of a "bundle of incidents." Under this view, the wife's right to support is one of the incidents of the marriage which has been classified as a personal right of the wife which cannot be terminated by judgment of a court lacking jurisdiction of her person. As a result of this concept, it has been held that a court of the wife's domiciliary state can, even after the rendition of a valid ex parte divorce decree by a foreign court at the suit of the husband, enter a judgment enforcing the wife's right to support, under the law of her domiciliary state, assuming, of course, that the court of the state of the wife's domicile has jurisdiction of the husband's person or of his property. *Vanderbilt v. Vanderbilt*, 354 U.S. 416, 77 S.Ct. 1360, 1 L.Ed.2d 1456 (1957); Note, Divisible Divorce, 76 Harv.L.Rev. 1233 (1963). Of course, if the court rendering the post-divorce alimony decree has jurisdiction only

---

1. Provisions for child support, of course, do not violate the public policy of Texas.

over the property of the husband, the alimony decree is enforceable only against the property of the husband within the jurisdiction of that court. Restatement 2d, Conflict of Laws § 77 (1971).

This concept of divisible divorce, insofar as it permits a court of the wife's domiciliary state to enter an order for her support after the marital relationship has been dissolved by a decree of a foreign court, is applicable only in cases where the foreign court lacked jurisdiction of the person of the wife. *Lynn v. Lynn,* 302 N.Y. 193, 97 N.E.2d 748 (1951); Restatement 2d, Conflict of Laws § 77, comment e (1971). The United States Supreme Court, in cases such as *Vanderbilt,* in upholding the right of the state of the wife's domicile to make provision for her support following a valid foreign divorce, has always spoken in terms of ex parte foreign divorces. Since we find no basis for rejecting the finding of the court below that the Texas court which rendered the divorce decree had jurisdiction of the parties to such divorce suit, we need concern ourselves no further with the doctrine, other than to point out that the Maryland courts have adopted it. *Dackman v. Dackman,* 252 Md. 331, 250 A.2d 60 (1969).

For the purpose of this opinion, we assume, without deciding, that the Texas divorce decree terminated appellant's right to support, although it might be argued that since the Texas courts are prevented by Texas law from ordering a husband to support his wife after the divorce, the question of permanent alimony was not litigated in the Texas court.

However, such assumption merely leads to the conclusion that the Maryland court should have given conclusive effect to the Texas decree and denied appellant's prayer for alimony. That is, the Maryland court should have given full faith and credit to the Texas judgment as finally determinative of appellant's right to support after the divorce. It is clear that the Maryland court failed to give such effect to the Texas judgment. The question, then, is whether the refusal of the Maryland court to give full faith and credit to the Texas judgment

relieves the Texas courts of the obligation to enforce the Maryland decree.

■ It is clear that a Texas court, when asked to give full faith and credit to another state's judicial proceedings, may collaterally inquire into the jurisdiction of the foreign court to enter the judgment in question. *Williams v. North Carolina,* 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945); *Gunther v. Gunther,* 478 S.W.2d 821 (Tex. Civ.App.—Houston [14th Dist.] 1972, writ ref'd n. r. e.).

■ Appellee insists that the Maryland court had no jurisdiction to enter the decree which appellant now seeks to enforce in Texas. There are two reasons why this argument is unpersuasive.

In the first place, as already pointed out, appellee's pleadings below raise no question concerning the jurisdiction of the Maryland court to enter the judgment. His pleadings merely assert that because the Texas divorce was rendered prior to the Maryland decree and because appellant "flaunted" the jurisdiction of the Texas court, she is "estopped" from attempting to enforce the subsequent Maryland decree. There is no allusion to the power of the Maryland court. At best, appellee's answer can be interpreted only as a plea of res judicata or, perhaps, estoppel by judgment. The pleading condemns the actions of appellant, not the action of the Maryland court.

The conclusions of law filed by the court below recite that the "parties and the issues were the same in Texas as in the State of Maryland finally," and that the Maryland court "was without jurisdiction to proceed to grant any type of relief to [appellant] on any issue decided by the Texas Court."

■ We know of no rule supporting the conclusion that the jurisdiction of a court of a sister state is affected by the action of a Texas court. The Texas divorce decree would not, in fact, have deprived even a Texas court of jurisdiction to entertain a subsequent suit involving the same issues. It is true, of course, that the prior decree could be successfully interposed as a defense to the subsequent litigation involv-

ing the same parties and the same issues. But this invocation of the prior judgment would be simply a resort to the doctrine of res judicata. The plea of res judicata is a plea in bar. It is not a plea to the jurisdiction. *Burson v. Montgomery,* 386 S.W.2d 817 (Tex.Civ.App.—Houston 1965, no writ). Res judicata is an affirmative defense which must be affirmatively pleaded. Rule 94, Tex.R.Civ.P. Failure to plead this defense results in its waiver. 34 Tex.Jur.2d, Judgments § 551, p. 654. Since it is elementary that a court's lack of jurisdiction over the subject matter cannot be waived, it must be concluded that a final determination by one court of the issues before it has no effect on the power of other courts. It cannot be held that the Texas divorce decree in some manner deprived the Maryland court of jurisdiction.

The findings of fact and conclusions of law make no reference to the in personam jurisdiction of the Maryland court. They do not contain a statement to the effect that appellee was not subject to the jurisdiction of that court. The issue of in personam jurisdiction of the Maryland court was not raised by the pleadings.

■ In the second place, even if we give to the pleadings and the findings of fact and conclusions of law the broadest possible interpretation and conclude that the lower court concluded that the Maryland court lacked jurisdiction of the subject matter and the person of appellee, such a finding cannot stand. While, as pointed out above, a Texas court which is asked to enforce the the judgment of a sister state may collaterally inquire into the jurisdiction of the court of such other state, this collateral inquiry is permissible only where the party resisting enforcement of the foreign judgment did not appear in the foreign proceedings. In the case before us, appellee appeared in the Maryland proceedings and unsuccessfully litigated the question of the jurisdiction of the Maryland court. He therefore had no right to relitigate the jurisdictional issue in Texas. *Sherrer v. Sherrer,* 334 U.S. 343, 68 S.Ct. 1087, 1097, 92 L.Ed. 1429 (1948); *Davis v. Davis,* 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed.

26 (1938). In *Gunther,* supra, the Texas court correctly inquired collaterally into the jurisdiction of the California court, since the party resisting enforcement in Texas of the California judgment received no notice of the California proceedings, nor did he participate in such proceedings in any way. 478 S.W.2d at 821.

The trial court's conclusion, if, in fact, it concluded, that the Maryland court lacked jurisdiction of the subject matter or of the parties is erroneous.

The law applicable to this case is stated in *Roche v. McDonald,* 275 U.S. 449, 451–52, 48 S.Ct. 142, 143, 72 L.Ed. 365 (1927), as follows:

> It is settled by repeated decisions of this Court that the full faith and credit clause of the Constitution requires that the judgment of a State court which had jurisdiction of the parties and the subject-matter in suit, shall be given in the courts of every other State the same credit, validity and effect which it has in the State where it was rendered, and be equally conclusive upon the merits; and that only such defense as would be good to a suit thereon in that State can be relied on in the courts of any other State.

The place to raise the defense that the Texas divorce decree should be given full faith and credit as determinative of appellant's right to support was in the Maryland court and, in fact, appellee expressly raised that issue by his pleadings in the Maryland proceedings. As the New York court of appeals pointed out in *Lynn,* supra, appellee's only remedy to correct the error, if any, of the Maryland court in failing to give adjudicative effect to the Texas judgment was by direct appeal through the Maryland courts and, if necessary, to the Supreme Court of the United States. 97 N.E.2d at 751. Texas courts cannot sit as appellate tribunals for the purpose of correcting mistakes made by Maryland courts in applying the Full Faith and Credit Clause.

The fact that the Maryland court failed to give full faith and credit to the prior Texas judgment does not justify retaliatory action by the Texas courts. *Morris v.*

**648**

*Jones,* 329 U.S. 545, 552, 67 S.Ct. 451, 91 L.Ed. 488 (1947). As the court said in *Southard v. Southard,* 305 F.2d 730, 732 (2d Cir. 1962):

> It is clear . . . [the appellant] entered an appearance in the Connecticut divorce action the outcome of which he here seeks to attack. His person was thus under the jurisdiction of the Connecticut court, and there are. no allegations which could support collateral attack on the judgment. Whether or not the appellant subsequently defaulted as to the further proceedings leading up to the judgment, and whether or not he was deprived of rights by errors of the Connecticut court, our determination that that court had jurisdiction over him and the case precludes any further attack on the judgment. *Morris v. Jones,* 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488 (1947). The substantive defense that the Connecticut divorce was barred by the requirement that that state give full faith and credit to the Nevada decree was one that could have been and indeed apparently was raised in the Connecticut court. Whether that court actually passed upon the defense or not, principles of *res judicata* forbid us to consider it. The appellant's opportunity to attack the Connecticut decree on the merits died with his failure to appeal, * * *. *Morris v. Jones,* supra; *Reed v. Allen,* 286 U.S. 191, 201, 52 S.Ct. 532, 76 L.Ed. 1054 (1932); Restatement, Judgments § 42 (1942).

In summary: (1) Appellee, having appeared in the Maryland proceedings and having litigated the jurisdictional question unsuccessfully there, cannot relitigate the question of the jurisdiction of the Maryland court in Texas, not in view of the final determination of that question by the Maryland court, may a Texas court collaterally review the correctness of such determination, as it would have the power to do if appellee had not appeared in the Maryland suit. (2) Even if it be assumed that the Maryland court erroneously failed to give full faith and credit to the prior Texas divorce decree, appellee's right to attack the Maryland judgment on that ground "died

with his failure to appeal" from that judgment. (3) The error, if any, of the Maryland court in refusing to give full faith and credit to the Texas judgment does not justify the refusal of the Texas court to enforce the Maryland judgment. (4) The traditional Texas policy against permanent alimony does not support the refusal to enforce foreign decrees reducing unpaid alimony installments to money judgments.

The judgment of the trial court is reversed and judgment is here rendered that appellant, Janet L. Layton, recover from appellee, Gary A. Layton, the sum of $8,233.68, with interest at the rate of 9% per annum from January 3, 1973, the date of the Maryland judgment which judicially ascertained and reduced to a liquidated amount the extent of appellee's arrearage in alimony and child support payments.