**William Henry JOINER, Jr., Appellant,**

v.

**Mrs. Karen H. VASQUEZ, Appellee.**

No. 20558.

Court of Appeals of Texas,
Dallas.

Dec. 11, 1981.

Rehearing Denied En Banc April 30, 1982.

Charles H. Robertson, Dallas, for appellant.

Steven G. Condo's, Louis Davis, Jr. (ad litem), Dallas, for appellee.

Before GUITTARD, C. J., and AKIN and CARVER, JJ.

GUITTARD, Chief Justice.

William Henry Joiner, Jr. appeals from a denial of his bill of review attacking a decree terminating his parental rights in two children. We affirm because Joiner's present bill of review is barred by a judgment rendered against Joiner in an earlier bill of review alleging similar grounds.

The record reflects that Joiner was married to Karen in 1967 and thereafter two children were born to them while they were residents of the State of Oklahoma. The parties were divorced in 1971 in Oklahoma proceedings, and the children were placed under the control of Karen while Joiner was required to provide for their support. Karen and the children remained in Oklahoma until 1974, when they moved to Texas. In 1976 Karen instituted a proceeding in the juvenile court of Dallas County to terminate Joiner's parental rights. A guardian ad litem was appointed to represent the children's interests. Personal service of process was first attempted upon Joiner and, thereafter, service was undertaken by publication and an attorney ad litem was appointed to represent Joiner. On June 3, 1976, following a trial before the court, the juvenile court rendered final decree terminating Joiner's parental rights.

On the following February 24, 1977, Joiner filed his first bill of review attacking the termination decree on the grounds that he had a meritorious defense to the grounds alleged in the termination petition, that the record contained no evidence that termination of his parental rights would be in the best interest of the children, that he was not served by personal service and had no knowledge of the suit or the trial, that the appointed attorney ad litem did not contact him, that he was prevented from presenting his meritorious defense without negligence on his part, that the evidence at the trial did not support termination of his parental rights, and that in these respects he was denied his constitutional rights.

The court heard evidence on this first bill of review and denied the relief sought by an order signed September 22, 1977. Joiner did not appeal. Instead, he filed a second bill of review on the same grounds, which the court dismissed on a plea of res judicata. Again, he did not appeal. His present and third bill of review was filed January 3, 1980. In this bill of review he alleges the same grounds as in his first bill of review and other grounds as well. He alleges that citation by publication in the termination suit was improper because the officer's re-

turn did not show diligence in attempting personal service, that the appointed attorney ad litem did not provide effective representation, and that the evidence before the court in the earlier suit was insufficient to support termination. He also alleges that section 11.09 of the Texas Family Code, which authorizes citation by publication to persons who cannot be notified by personal service or registered or certified mail, is unconstitutional because it requires publication only one time. He alleges that the first bill of review was brought within two years, the time permitted by rule 329 of the Texas Rules of Civil Procedure for a motion for new trial after a judgment is rendered on citation served by publication. He further alleges that the judgment of September 22, 1977, denying his first bill of review, does not bar his present bill of review "because the defense of res judicata is not applicable to jurisdictional questions."

In response to the third bill of review, Karen filed a plea of res judicata based on the judgment denying the first bill of review. At a pretrial hearing the plea of res judicata was sustained and judgment was rendered that the bill of review "be and the same is denied as a matter of law." The judgment recites that a guardian ad litem appointed by the court appeared and represented the children, but no pleading by him is shown.

Joiner first argues that the trial court was in error in sustaining the plea of res judicata because the facts he pleaded showed that the termination decree was void, and, therefore, the judgment denying the first bill of review could not give the void termination decree any validity or bar his current attack. To support this argument, Joiner relies on judicial expressions, such as those in *Fulton v. Finch*, 162 Tex. 351, 346 S.W.2d 823, 827 (1961), and *Dews v. Floyd*, 413 S.W.2d 800, 804–05 (Tex.Civ. App.—Tyler 1967, no writ), to the effect that a void judgment is a nullity and may be disregarded anywhere at any time. From this premise, Joiner reasons that a judgment denying a bill of review does not bar a subsequent bill of review if the original judgment is void. Consequently, he insists, no matter how many bills of review

may be attempted unsuccessfully, none can result in final disposition of the controversy until the voidness of the original judgment is correctly declared or the rights of third parties have intervened.

■ This argument is untenable for two reasons. First, the termination decree is not "void" in the sense that that term is used in the cases cited. It is a judgment which the juvenile court had jurisdictional power to render in the sense of jurisdiction over the subject matter. It is alleged to be "void" only because of lack of proper service of process, that is to say, lack of jurisdiction of the person. Since it reveals no lack of jurisdiction on its face and recites proper service, it is not subject to collateral attack. *Pure Oil Co. v. Reece*, 124 Tex. 476, 78 S.W.2d 932, 934–35 (1935); *Crawford v. McDonald*, 88 Tex. 626, 33 S.W. 325, 328 (1895); *Imatani v. Marmolejo*, 606 S.W.2d 710, 713 (Tex.Civ.App.—Corpus Christi 1980, no writ). Such a judgment is subject to attack only by a bill of review in which evidence of lack of service is adduced and a meritorious defense is shown. *Deen v. Kirk*, 508 S.W.2d 70, 72 (Tex.1974); *McEwen v. Harrison*, 162 Tex. 125, 345 S.W.2d 706, 710 (1961). For example, a divorce decree may be attacked in a bill of review on the ground that the record affirmatively shows that a waiver of process is invalid, but it is not subject to collateral attack on that ground, since the court had jurisdictional power to determine validity of the waiver and to render the decree. Thus, we cannot agree that a termination decree rendered on defective service by publication is "void" in the sense that it may be disregarded anywhere and at any time. *Deen v. Kirk, supra.*

■ Second, the plea of res judicata was properly sustained because the judgment denying the first bill of review is conclusive on the issue of the court's jurisdiction in the termination suit. The first bill of review was a direct attack, and might properly have been considered as a motion for new trial within rule 329, to which the strict requirements of a bill of review did not apply, because citation was

served by publication and the bill of review was filed within two years. Nevertheless, a direct attack was made, the jurisdiction of the juvenile court in the termination proceeding was put in issue, relief was denied, and Joiner did not appeal. That judgment bars the present bill of review under the well-settled rule that a party is bound by an adjudication of the court's jurisdiction in a contested proceeding. Restatement of Judgments § 9 (1942).

■ Under this rule, a Texas court is bound by its own earlier judgment determining an issue of jurisdiction. *Farmer v. Saunders*, 60 Tex.Civ.App. 197, 128 S.W. 941, 942 (1910, no writ). The rule is based on the principle that there must be an end to litigation, and when a party has had his day in court with an opportunity to present his evidence and his view of the law, there is no reason to believe that the second decision will be more satisfactory than the first. *Stoll v. Gottlieb*, 305 U.S. 165, 171–72, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938). Moreover, judicial power includes the power to make erroneous as well as correct decisions; otherwise a judgment would always be subject to attack on its merits, and litigation would never end.

Under these well-established rules, even though the original termination decree may be void—or, more properly, voidable—in the sense that it was rendered without valid service of process, the judgment in the first bill of review is valid and stands as a bar to the present bill of review. No attack on the bill-of-review judgment is made here for lack of jurisdiction over either parties or subject matter in that proceeding. Obviously, if the court had granted relief setting aside the termination decree and restoring Joiner's parental rights, and no appeal had been taken, all parties would have been bound. If the contrary determination was erroneous for any of the reasons now alleged, Joiner's remedy was to appeal. His right to attack the termination decree died with his failure to appeal from the denial of his first bill of review. *See Layton v. Layton*, 538 S.W.2d 642, 648 (Tex.Civ.App.— San Antonio 1976, writ ref'd n. r. e.).

■ Joiner insists that he should not be bound by the judgment denying his first bill of review because he has raised additional issues that were not raised in that proceeding. In particular, he asserts that the best interest of the children is the paramount consideration and their interest has never been determined. Although this argument has a strong appeal, it cannot prevail against the established rules governing the finality of judgments announced by the authorities above cited. Assertion of additional grounds which, by the use of diligence, might have been tried in an earlier proceeding does not avoid the bar of res judicata. *Rizk v. Mayad*, 603 S.W.2d 773, 775–76 (Tex.1980); *Ogletree v. Crates*, 363 S.W.2d 431, 435 (Tex.1963). Otherwise a resourceful lawyer could always allege an additional ground and litigation would never end. Since in the first bill of review (or motion for new trial under rule 329) Joiner presented or had the opportunity to present all the facts challenging the jurisdiction of the court rendering the termination decree, as well as facts showing his meritorious defenses, and the court rendered an adverse judgment from which he took no appeal, the trial court properly sustained the plea of res judicata.

■ Neither can we accept Joiner's premise that established rules governing finality of judgments do not apply when the interests of minor children are at issue. He argues that so long as no rights of third parties have intervened, as in the case of an adoption, the merits of the termination decree should be subject to review. We cannot agree that the principle of finality of judgments does not apply to children. Rather, it applies to them with a special force, as the supreme court has recognized. *Knowles v. Grimes*, 437 S.W.2d 816, 817 (Tex.1969); *Ogletree v. Crates*, 363 S.W.2d 431, 436 (Tex.1963). The reason is stated in *Ogletree*, which involved an allegation that an earlier custody decree was procured by fraud. The supreme court said:

There may be a technical distinction between a suit to obtain custody and possession of a minor child through modifica-

tion of a final judgment and a suit to obtain custody and possession of the child by setting aside a final judgment, but the broad cause of action and the relief sought in both suits are the same. The suit in each instance tests the rights of the parties to custody of the child and the only pertinent inquiry is the best interests of the child. As a matter of public policy there should be a high degree of stability in the home and surroundings of a young child, and, in the absence of materially changed conditions, the disturbing influence of constant re-litigation should be discouraged. Once a final judgment of custody is rendered, a subsequent suit to modify or to avoid the judgment should be res judicata of all causes of action which, with diligence, could have been asserted in the suit as a basis for obtaining custody and possession of the child.

█ Joiner also argues that the trial court erred in sustaining the plea of res judicata and dismissing his bill of review at a pretrial hearing, rather than on a motion for summary judgment or trial on the merits. He relies on a line of cases which hold that since res judicata is a merit defense which must be supported by competent evidence, rather than a dilatory plea which may be considered at pretrial under rule 166 of the Texas Rules of Civil Procedure, final disposition upon a plea of res judicata may be had only on motion for summary judgment or trial on the merits. *See Kelley v. Bluff Creek Oil Co.*, 158 Tex. 180, 309 S.W.2d 208 (1958); *Phipps v. Miller*, 597 S.W.2d 458 (Tex.Civ.App.—Dallas 1980, writ ref'd n. r. e.); *Piper v. Estate of Thompson*, 546 S.W.2d 341 (Tex.Civ.App.— Dallas 1976, no writ); *Mason v. Tobin*, 408 S.W.2d 243 (Tex.Civ.App.—Houston 1966, no writ). We do not disagree with these authorities, but they have no application here. No further evidence was needed on the plea of res judicata because the record then before the court affirmatively showed that Joiner could not have prevailed on the merits. The conclusive bar of the judgment in the first bill of review is shown by Joiner's own pleading in the third bill of review, which affirmatively alleges the prior pro-

ceeding. Also, the court was required to take judicial notice of its own earlier records, which have been brought forward in our present transcript. *Victory v. State*, 138 Tex. 285, 158 S.W.2d 760, 763 (1942). Since Joiner's own pleading and records within the court's judicial knowledge affirmatively show that the only question presented was a matter of law, in that no facts could have been shown in a trial on the merits that would prevent the application of the bar of res judicata, we hold that at the time of the pretrial hearing the case was ripe for judgment sustaining the plea of res judicata and denying the relief sought by the bill of review. *Ellis v. Woods*, 453 S.W.2d 509, 510 (Tex.Civ.App.— El Paso 1970, no writ); *Pan American Petroleum Corp. v. Texas Pacific Coal & Oil Co.*, 340 S.W.2d 548, 554–55 (Tex.Civ.App.— El Paso 1960, writ ref'd n. r. e.).

We need not determine whether Joiner's minor children have a right to attack the termination decree. They were represented by an appointed guardian ad litem in the original termination suit under the authority of section 11.10 Tex.Fam.Code Ann. (Vernon Supp. 1980–81). The guardian ad litem did not appeal that decree. Neither the children nor the appointed guardian were parties to Joiner's first bill of review. In the present suit the trial court appointed a new guardian ad litem. The new guardian sought no affirmative relief on behalf of the children in the trial court and did not perfect an appeal from the trial court's dismissal of Joiner's bill of review. Before this court, the guardian ad litem has filed a brief advancing the same arguments as those presented by Joiner and urging that Joiner be given relief by this appeal, but the guardian makes no separate claim for relief on behalf of the children. Since the children did not seek a bill of review of the termination decree by any pleading or evidence offered to the trial court in their own behalf, we limit our consideration to the rights asserted by Joiner. Consequently, this opinion should not be interpreted as holding that any relief sought on behalf of the children would be likewise barred. Neither should it be taken as implying that

after a parent has failed in an attack on a termination decree, the children may maintain a separate suit attacking that decree.

Affirmed.

AKIN, J., dissenting.
Before the court en banc.

## ON MOTION FOR REHEARING

GUITTARD, Chief Justice.

■ In this motion for rehearing Joiner insists that the rule that a judgment valid on its face is not void and subject to collateral attack for lack of service does not apply to judgments against nonresidents because of due process requirements. He cites Hodges, "Collateral Attack on Judgments," 41 Tex.L.Rev. 499, 505–518 (1963). Professor Hodges points out that due process may require an exception to this rule in the case of nonresidents, but he recognizes that a collateral attack may be barred by the res judicata effect of an intervening judgment. *Id.* at 526.

Under such an exception, the juvenile court may have erred in the first bill of review, but that error cannot avail in this third bill of review. The termination decree did not reveal on its face any lack of personal jurisdiction. Such a lack was a matter of fact and could only be established by evidence. Joiner undertook to make that proof in his first bill of review, but the court declined to give him relief on that ground, and he failed to appeal. Although the termination decree may have been void for lack of jurisdiction over his person, the judgment in the first bill of review was not void, since he appeared and invoked the court's jurisdiction to determine whether it had jurisdiction of the termination action. The first bill of review judgment, though possibly erroneous, was valid in the jurisdictional sense, and Joiner's remedy was to appeal. Instead, he brought another bill of review on the same grounds, and, when relief was again denied, he brought a third, although he has never made any proper attack on the judgment in the first bill of review. If unsuccessful again, he may attempt a fourth, and so on, contending each time, as he does here, that no binding judg-

ment can be rendered until he is finally heard on the merits of the original termination action.

None of the authorities cited tend, even remotely, to support such a contention. The issue of service of process, like any other issue of fact, may be settled by a judgment in a contested proceeding under the principle stated in Restatement of Judgments Section 9 (1941) that a party is bound by an adjudication of the court's jurisdiction in a contested proceeding. The application of this principle to nonresidents is illustrated by authorities holding that Texas courts are bound by determinations of personal jurisdiction by foreign courts in cases where Texas residents have appeared in the foreign court and contested jurisdiction. *Moody v. First National Bank of Dona Ana County*, 530 S.W.2d 879, 881–82 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n. r. e.), following *Durfee v. Duke*, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963). The same rule has been applied to a jurisdictional determination by a foreign court in proceedings concerning the support and custody of children. *Kellogg v. Kellogg*, 559 S.W.2d 126, 128 (Tex.Civ.App.—Texarkana 1977, no writ); *Layton v. Layton*, 538 S.W.2d 642, 647–48 (Tex.Civ.App.—San Antonio 1976, writ ref'd n. r. e.). If a Texas court is bound by such a jurisdictional determination of a foreign court, then, on the same principle, a Texas court is bound by its own determination of jurisdiction in an earlier proceeding in which the nonresident appeared and contested the jurisdiction of the Texas court.

We do not hold that a nonresident defendant is bound by the recitals of service in a judgment and cannot attack it by extrinsic evidence showing lack of proper service. We do hold that having made an attack on that ground and failed, he may not make another.

■ Joiner seeks to avoid the bar of res judicata on the ground that the present proceeding is a collateral as well as a direct attack on the termination decree. He gains nothing by labeling the proceeding a collateral attack. Res judicata applies whether

the earlier attack was direct or collateral. See *McGhee v. Romatka*, 92 Tex. 38, 45 S.W. 552, 554 (Tex.Cr.App.1898) (collateral attack following direct attack); *Cheney v. Norton*, 181 S.W.2d 835, 836 (Tex.Civ.App. —Dallas 1944, writ ref'd) (collateral attack following bill of review treated as collateral attack for want of necessary parties); *"56" Petroleum Corp. v. Rodden*, 98 S.W.2d 269, 270 (Tex.Civ.App.—Texarkana 1936, no writ) (direct attack following collateral attack). In *McGhee v. Romatka, supra*, the supreme court held that a collateral attack in a subsequent suit for title to land was barred by the denial in the former suit of a motion for new trial alleging the same ground subsequently alleged. The court commented that if the earlier decision was erroneous, the losing party should have had it set aside.

 We know of no ground for avoiding a judgment that may be urged by collateral attack but not by direct attack. When the ground for avoiding the earlier judgment is lack of service of process, the party seeking relief need not show, as in the usual bill of review, that he was prevented from making his defense to the original suit by fraud, accident, or wrongful act of the opposing party. *Texas Industries, Inc. v. Sanchez*, 525 S.W.2d 870, 871 (Tex.1975). We need not determine whether Joiner was required in the first bill of review to prove a meritorious defense to the termination suit because even if the court erred in requiring him to do so, he is bound by the judgment denying the bill of review, since he made no effort to set that judgment aside by appeal. *McGhee v. Romatka, supra*. Consequently, we hold that the judgment in the first bill of review is a conclusive bar to the present suit.

We are not justified in disregarding these established principles on the ground that errors in the original termination suit and in the first bill of review will have an adverse effect on the welfare of the children. If final judgments are subject to review in subsequent proceedings on issues relating to the merits, but not specifically decided in the original suit, then litigation would never end until every new theory of fact and law advanced by resourceful counsel or his successor is fully explored and expressly determined. Although occasionally ideal justice may be more nearly attained as the result of a second trial, we must assume that in the great majority of cases the original judgment is proper and that subsequent proceedings would impose an intolerable burden of meritless litigation. The doctrine of res judicata, therefore, is not a mere rule of convenience that may be disregarded on later proof that justice was not done.

These principles apply with particular force to decrees terminating parental rights. Finality is even more important for a termination decree, which is intended to be final, than to a custody order, such as that in *Ogletree v. Crates*, 363 S.W.2d 431 (Tex.1963), which is subject to modification. If a termination decree may be reviewed on the ground that the merits were never finally decided because the interests of the children were not properly considered, then innumerable termination decrees would be subject to similar attacks. Although we may assume that most such attacks would fail, nevertheless, the unavailability of a plea of res judicata to cut short such attacks would cause incalculable burdens and misery for both parents and children. Consequently, we cannot be swayed by emotionally appealing arguments that such decrees fall into a special category to which the usual principles of finality of judgments do not apply. We adhere to the views stated in our original opinion.

The motion for rehearing is overruled.

AKIN, STEPHENS and GUILLOT, JJ., dissent.

AKIN, Justice, dissenting.

I cannot agree that res judicata, an equitable doctrine, should bar the present suit to set aside a void judgment of termination of the parental rights of the father. Neither can I agree with the majority that, in a termination case, the policy of finality of judgments should prevail over the policy, enunciated by the legislature in the Texas Family Code, that the best interests of the children should be paramount in any suit

affecting the parent-child relationship. In this respect, at no hearing have the interests of the children been considered, except at a hearing in 1980, in which the evidence showed that termination was not in the children's best interest, but the visitation order predicated on this hearing was aborted by the trial judge on the ground of res judicata. At the very least, the appeal of the children's guardian ad litem should be sustained and this cause remanded. The facts as reflected by the record indicate that an appalling miscarriage of justice has occurred and will be perpetuated unless an evidentiary hearing is had with respect to the best interest of the children and a ruling had based on the merits. Consequently, I am compelled to dissent.

This action commenced on February 10, 1976, when Mrs. Vasquez, then Mrs. Stephens, filed a suit to terminate Joiner's[1] parental rights. Mrs. Vasquez and Joiner were divorced in Oklahoma in 1971. That court awarded custody of the couple's two children to Mrs. Vasquez, with Joiner having reasonable visitation, and ordered Joiner to pay reasonable child support. In her original petition, Mrs. Vasquez sought termination on the ground that Joiner failed to pay court-ordered child support. An attempt was made to serve citation upon Joiner in Oklahoma, where he was a resident, but the citation was returned unexecuted on March 9, 1976. Mrs. Vasquez' counsel then filed an affidavit for citation by publication and, thereafter, service was attempted by publication. On May 18, 1976, a trial was had before the first judge,[2] at which Joiner was represented by court-appointed counsel, who neither filed an answer nor otherwise actively participated at trial; the only evidence tendered was the testimony of Mrs. Vasquez and Greg Stephens, her husband at the time of the trial. Mrs. Vasquez testified that her male child by Joiner was currently in Joiner's custody because her second husband (yet another man) had taken the child from her home to Joiner and that she believed that termination would be in the best interests of her children. Stephens testified that he had

been in contact with Joiner's parents and had attempted to locate Joiner but was unable so to do. At the conclusion of the testimony, the trial judge stated that because Joiner had physical custody and was supporting his son, the court would not terminate Joiner's parental rights on the ground of nonsupport. However, no order was entered reflecting this decision. On June 2, 1976, Mrs. Vasquez amended her petition to allege that Joiner had endangered the physical and emotional well-being of the male child. No attempt was made to serve Joiner with this amended petition, nor was a hearing held or evidence presented to support termination on this ground. Nevertheless, the judge rendered a Decree of Termination on June 3, 1976, which found that (1) the court had jurisdiction over the parties and subject matter and that no other court had continuing jurisdiction; (2) Joiner was guilty of nonsupport as to both children; (3) Joiner had placed "the child" (inferably the male child) in dangerous conditions; (4) termination was in the children's best interests; and (5) Mrs. Vasquez should be appointed as the children's managing conservator.

Thus, the trial judge rendered her decree without inquiring into the children's best interests, without inquiring into the diligence used in attempting to serve Joiner with the original petition as required by Tex.R.Civ.P. 109, without preparing a statement of evidence as required by Tex.R. Civ.P. 244 and 812, without any attempt to serve Joiner with notice of Mrs. Vasquez' trial amendment, without any findings as to the court's ground for asserting jurisdiction over Joiner, without any pleadings to support the appointment of Mrs. Vasquez as the children's managing conservator and despite the fact that the court had previously declined to terminate Joiner's rights as to the male child on the ground of nonsupport.

On February 24, 1977, Joiner filed a petition in the trial court entitled "Motion for Bill of Review." At a hearing thereon, before Judge Penfold, the second judge in-

---

1. Joiner was the first of Mrs. Vasquez' four husbands.

2. The judge who presided over the original proceedings was not the present trial judge.

volved here, Joiner presented testimony attempting to show that Mrs. Vasquez failed to use diligence in attempting to serve him with citation. Although Joiner's petition should have been considered a motion for new trial pursuant to Tex.R.Civ.P. 329, the trial judge treated it instead as a bill of review. Under rule 329, the court should have granted Joiner a new trial based upon the testimony presented, but because the trial judge mistakenly treated the petition as a bill of review, he required Joiner to establish that he had a meritorious defense as well, upon which no evidence was presented. Thus, he denied Joiner's petition, although he found that Mrs. Vasquez had perpetrated a fraud on the court, that failing to answer was not Joiner's fault, and that no other remedy existed. Although Judge Penfold stated that this was the worst record of any termination case he had ever heard and that Mrs. Vasquez had perpetrated a fraud on the court, he incorrectly believed that he was precluded from granting relief because Joiner had not established a meritorious defense with respect to Mrs. Vasquez' amended petition in the first action. Joiner's failure to appeal this order is the ground upon which the majority invokes the doctrine of res judicata to preclude this matter. Thus, this tragedy for these children has been perpetuated.

Joiner did not appeal the denial of his motion, but instead, under the apparent theory that the trial court had continuing jurisdiction, filed a second bill of review five days after the first bill of review was denied. On March 7, 1978, the trial court denied the second bill of review without a hearing based upon the res judicata effect of the first bill of review. No appeal was taken from this order.

Subsequent to the first two petitions designated as bills of review, Mrs. Vasquez entered into a contract with Joiner, whereby Joiner would pay her certain sums of money in exchange for permitting him regular weekend possession of the children and further that Mrs. Vasquez would consent to Joiner's adoption of his children. Pursuant to this contract, visitation was implemented by Joiner seeing the children regularly until Mrs. Vasquez again changed her mind and severed contact between Joiner and his children before she had permitted an adoption to take place.[3]

Thereafter, Joiner's parents filed a petition in the old termination suit, seeking grandparent visitation rights with their grandchildren and, on October 29, 1979, the trial judge signed *an agreed temporary order*[4] appointing Joiner and his parents as temporary possessory conservators of the children and giving Joiner visitation rights.[5] On February 8 and 27, 1980, the trial judge conducted a hearing to determine whether the agreed temporary orders should be extended. Although the court-appointed psychologist testified at the hearing that it would be in the best interests of the children for Joiner to have a permanent relationship with his children, the trial judge refused to extend the temporary order on the ground of res judicata asserted by Mrs. Vasquez, who had obviously again changed her mind.

On January 3, 1980, after retaining new counsel, Joiner filed a third bill of review. Without a hearing, the trial judge again denied the petition on the ground of res judicata. From this bill of review, Joiner has now appealed to this court. Thus, from the time of the original termination proceeding in 1976 through the third bill of review, the best interest of the children was considered in only one instance, the hearing on a continuation of the agreed temporary

3. This information was attached to a motion by Joiner to supplement the transcript, which motion was denied on September 3, 1980, by a panel of this court (including the author of the majority opinion but not the dissenter) on the ground that the information was immaterial to a resolution of this case.

4. This order was agreed to by Mrs. Vasquez and Joiner, thus tending to negate her original

contention that Joiner placed his son in "dangerous circumstances." Indeed, no evidence has ever been presented to any judge supporting this allegation.

5. Apparently, Judge Penfold also believed he had continuing jurisdiction of the parent-child relationship.

order in 1980, at which no evidence was adduced supporting termination but instead all of the evidence showed that the best interest of the children would be served by permitting the children to visit and to continue their relationship with their father. Indeed, the psychologist testified that both children were emotionally disturbed by lack of association with their father and could be permanently scarred emotionally because both had been told by their mother that Joiner did not want to have anything to do with them. Consequently, both felt rejected by their father. Extraordinarily, this situation persists although Joiner has been engaged for over six years in a vain attempt to be able to retain a parental relationship with his children. Indeed, his efforts have been remarkable and commendable in this respect.

Unlike the majority, I cannot agree that an appellate court is impotent to act to rectify the tragedy of errors which has dogged and precluded a consideration of the best interests of these children. Needless to say, the doctrine of res judicata should not be employed by the trial court and this court to bar a consideration of what is in the children's best interest. The question presented is actually one of policy, i.e., should the policy behind finality of judgments prevail over the policy of the Texas Family Code decreeing that where children are concerned their best interest should be the paramount concern of the court?

With respect to res judicata, we noted in *Gilbert v. Fireside Enterprises, Inc.*, 611 S.W.2d 869, 877 (Tex.Civ.App.—Dallas 1980, no writ), that the supreme court has held that where the matter had not been actually litigated, the question of whether causes of action which could have been litigated, but were not, would not invoke application of the harsh doctrine of res judicata to bar further litigation unless compelling public policy considerations would be substantially offended by the new action before it is precluded by res judicata. *Westinghouse Credit Corp. v. Kownslar*, 496 S.W.2d 531, 532 (Tex.1973). Here no *compelling* policy considerations are offended by reversing this denial of the bill of review and by permitting a determination on the merits of

what is in the best interest of the children. To the contrary, the majority, as well as the trial court, uses the doctrine of res judicata to preclude a consideration of the best interest of the children, which in my view is untenable.

In *Kownslar*, the supreme court stated that, in determining whether, as a matter of policy, res judicata should apply to bar a second action, a court must look first to whether there is a Texas case directly in point, and if not, whether some substantial policy consideration would be offended. *Id.* at 532. Here, no Texas case is directly in point and neither is any substantial policy consideration offended. Indeed, the contrary is true. *In the Interest of G.M.*, 596 S.W.2d 846, 847 (Tex.1980), the supreme court, in holding that a clear and convincing proof standard was required in termination cases, noted that "termination is a drastic remedy and is of such weight and gravity" that due process required a burden of proof greater than a preponderance of the evidence in involuntary termination cases. In light of the supreme court's strong expression with respect to the proof required in an involuntary termination case, I cannot believe that the supreme court would endorse application of the doctrine of res judicata to preclude a full hearing to determine the best interest of children in a termination case, especially in a case such as this where no evidence to support the termination decree has ever been adduced.

Neither does the supreme court decision in *Ogletree v. Crates*, 363 S.W.2d 431 (Tex. 1963), relied upon by the majority, support their decision. *Ogletree* concerned custody of children rather than termination of parental rights. Different considerations are applicable to a termination case where the judgment of the court, even though erroneous, is final, as opposed to a custody dispute where the order of the court is subject to further review by the trial court at a later date based upon changed conditions as to the children. In a custody case, if a mistake is made with respect to the best interest of children, the trial court has continuing jurisdiction to rectify that mistake if the circumstances of the children so justify.

To the contrary, in a termination case, such as here, the judgment is final for eternity, even though the children may suffer in the sole custody of their mother, in addition to being deprived of a relationship with their father. Indeed, if her circumstances continue as shown here, the children may need the intervention of their father, which would be precluded by the majority's decision. *See Durham v. Barrow*, 600 S.W.2d 756 (Tex.1980). Consequently, *Ogletree* is not precedent to support the conclusion of the majority, which if left to stand, precludes forever the relationship between a father and his children, which a court appointed expert concluded was not in the children's best interest. Indeed, *Ogletree* is inapposite to the majority's holding because that court considered the best interest of the children in determining, as a matter of policy, to utilize res judicata to preclude further custody litigation at that time.

Moreover, we have held in *C_____ v. C_____*, 534 S.W.2d 359 (Tex.Civ.App.— Dallas 1976, no writ) that the best interest of children is the primary concern of the court and that the ordinary procedural rules restricting the granting of a new trial should not be strictly adhered to by the trial court where the best interest of children is concerned. Likewise, the rationale of *C_____ v. C_____* should apply here and we should hold that the best interest of children should not be precluded by the policy behind finality of judgments, especially in a termination suit such as here.

Furthermore, the majority refuses to consider the merits of the minor children's attack on the termination decree because the children's guardian ad litem did not seek a bill of review by pleading in the trial court and did not appeal the dismissal of Joiner's third bill of review. The majority concludes that because the guardian ad litem sought no affirmative relief in the trial court, the children are precluded forever from relief, apart from their father, in this court. With this I cannot agree.

The primary purpose in appointing a guardian ad litem is to insure that the interests of minor children are protected. In the trial court, the guardian ad litem did not need to join in Joiner's pleading nor

offer any evidence because the trial judge had the entire record of all the prior proceedings before him, as well as Joiner's contentions in which the children now join on appeal. All of Joiner's contentions on this appeal have been considered by the trial judge in the various hearings. In none of these proceedings was the best interest of the children considered, except in a hearing in 1980 in which the interest of the children was considered, and where the evidence showed that Joiner's parental rights should not be terminated. Under the rationale of *C_____ v. C_____*, this evidence was so compelling so as to require the trial judge to hold a full evidentiary hearing, with all parties present, to present, and to consider, evidence on what was in the best interest of the children and to make a decision on the children's best interests on that evidence.

Likewise, under the rationale of *C_____ v. C_____*, this court should consider the merits of the children's claim apart from Joiner's parental rights, because the children are the real parties in interest. The guardian ad litem has joined Joiner in seeking a new trial so that the best interest of the children can be determined, which should be the primary concern of this court, as well as of the trial court. The law requires a court to consider the best interest of the children in a termination case and a guardian ad litem is appointed to insure that those interests are in fact protected. The majority's position precludes us from considering the guardian ad litem's appeal in behalf of the children because, although presented to the trial judge by Joiner, the guardian did not adopt Joiner's pleadings in the trial court. With this I cannot agree because the guardian ad litem is charged with protecting the children's interests, both in the trial court and in this court. The majority is again using a technical procedural rule, of doubtful application in this termination suit, to preclude a hearing of that which is in the children's best interest.

Neither can I agree with the majority's assertion that their opinion does not bar forever the children's rights because a guardian ad litem's representation is limit-

ed to matters related to the suit for which he was appointed. *Durham v. Barrow*, 600 S.W.2d 756, 761 (Tex.1980). Just as Joiner, the guardian appointed here would be barred by res judicata to bring another bill of review on behalf of the children under the majority's rationale. Likewise, Joiner would lack standing to bring a bill of review, as next friend of the children, because his parental rights have been terminated. *Id.* at 760. Thus, under the majority's holding, the judiciary is forever rendered impotent to rectify this travesty of justice for these children. Small wonder that the judiciary has been held up to ridicule by laymen.

Faced with the plethora of judicial errors replete in this case, the majority's observation, with respect to the first and second bills of review, that "judicial power includes the power to make erroneous as well as correct decisions" is small comfort to a father denied contact with his children and to the children for whom no evidentiary hearing has been had nor ruled upon by any judge with respect to what is in their best interest. Instead, the majority's rationale is but another judicial reason to frustrate the overriding public policy of determining that which is in the best interest of children in favor of procedural technicalities.

The majority places great emphasis on whether the termination decree in 1976 was void or voidable. In my view, the original decree is void for lack of jurisdiction over Joiner, which was clearly established on the first "bill of review" hearing. Additionally, it is void because the petition upon which termination was decreed was not even attempted to be served upon Joiner even by publication. Indeed, no attempted service was had nor was a hearing had upon the amended pleading. I would suggest that, even more importantly, the judgment is void because the trial court simply lacked the jurisdictional power to render an order purporting to be in the children's best interest, when their best interest had not been considered. *See* Hodges, "Collateral Attacks on Judgments," 41 Tex.L.Rev. 499 (1963).

Although the original decree of termination was unquestionably void, our question is whether subsequent unsuccessful attacks upon it in the trial court can impart validity to that void decree. To support its conclusion in holding that it does, the majority relies upon the denial of the first bill of review to breathe life into a void judgment on the basis of the failure of Joiner to appeal! This conclusion is predicated upon res judicata, a species of estoppel. Estoppel, of course, is based upon equitable principles, which should not be employed to uphold a void termination judgment procured by fraud upon the trial court. *See First State Bank & Trust Co. v. Overshiner*, 198 S.W. 979 (Tex.Civ.App.—El Paso 1917, no writ) ("the trial court has the authority to set aside a judgment which is a nullity, notwithstanding it has been affirmed upon appeal"). *See also Evans v. Young County Lumber Co.*, 368 S.W.2d 783, 786 (Tex.Civ. App.—Ft. Worth 1963, writ dism'd) (a void judgment "may be collaterally attacked in any court at any time, including a time after appeal is perfected"). It appears to be that a void judgment in a termination suit is subject to attack at any time in any court, *Fulton v. Finch*, 162 Tex. 351, 346 S.W.2d 823, 827 (1961); *Commander v. Bryan*, 123 S.W.2d 1008 (Tex.Civ.App.—Ft. Worth 1938, no writ). *See also Ruby v. Davis*, 277 S.W. 430 (Tex.Civ.App.—Amarillo 1925, no writ). Consequently, I would hold that the equitable doctrine of res judicata, based on the public policy with respect to finality of judgments, should not be utilized as a reason for precluding a hearing and a ruling on whether the parental rights of Joiner should be terminated, considering the children's best interest. *See Ogletree v. Crates, supra, see also Gilbert v. Fireside Enterprises, Inc., supra.*

In conclusion, I cannot join in a decision that places the policy concerning finality of judgments over the policy of considering the best interest of children in a termination case. Accordingly, I am compelled to dissent in this tragedy of judicial errors. This case cries out for justice for these children to be determined in an evidentiary hearing and ruled upon by the evidence presented. My view is particularly compelled by the constitutional constraints

placed upon termination of parental rights by the United States Supreme Court and the Texas Supreme Court. *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Wiley v. Spratlan*, 543 S.W.2d 349 (Tex.1976).

GUILLOT, J., concurs.

GUILLOT, Justice, dissenting.

While I agree with the result reached in Justice Akin's dissent, I believe the compelling reasons for reversing and remanding this case are constitutional.

At the outset this court should be cognizant of the constitutional right of family integrity. The State's severance of a parent/child relationship must receive strict judicial scrutiny. *Roe v. Conn*, 417 F.Supp. 769 (M.D.Ala.1976).

While many of the decisions dealing with the constitutional issues raised in parent/child proceedings deal with the rights of parents, nevertheless, the reasoning in those cases applies to children as well. In *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), the United States Supreme Court held that a father had a constitutional right to a hearing before the State could take his children from him. I would hold the reverse is also true: children have a right to a hearing before one of their parents is taken from them. It is undisputed in this case that no such hearing took place.

The rights of juveniles have been protected in delinquency hearings. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). *Gault* held that a minor is entitled to, among other things:

(a) right to notice;

(b) right to counsel;

(c) right to confrontation and cross-examination; and

(d) right to a transcript of the proceedings.

I would apply these rights to minors who are subject to losing either of their parents. Testing the record vis-a-vis *Gault* with respect to notice, it reflects no notice of the amended pleadings was given to the chil-

dren; with respect to right to counsel, there is no evidence that the court-appointed attorney served the children's behalf between May 18, 1976, and the final motion for rehearing some four years later;[1] with respect to the right to confrontation and to a transcript of the proceedings, the record reflects no hearing was ever had on the amended pleadings.

Furthermore, the failure to serve amended pleadings on the children is not only constitutionally defective, it has long been the law that if an amended pleading asserts a new cause of action, service of process is necessary. *Morrison v. Walker*, 22 Tex. 18 (1858); *Sanchez v. Texas Industries, Inc.*, 485 S.W.2d 385 (Tex.Civ.App.—Waco 1972, writ ref. n.r.e.). There is no doubt that the real parties in interest in this case are the children. *See C. v. C.*, 534 S.W.2d 359 (Tex. Civ.App.—Dallas 1976, no writ). It necessarily follows that the amended pleadings should have been served on them.

Moreover, papers should have been served on the children because they are persons needed for just adjudication. *See* Rule 39 Tex.R.Civ.P. 39.

In addition to being recognized in the federal court system, the constitutional rights of children are recognized in the State system also. *See Ricketts v. Ricketts*, 265 Ark. 28, 576 S.W.2d 932 (1979, *en banc*). I would hold that the children in the present case have a constitutional right to a termination hearing at which they may adduce evidence, examine witnesses, and conduct the trial in such a manner as to assist the trier of fact to determine what is in their best interest.

AKIN and STEPHENS, JJ., concur.

---

1. At the first hearing the court refused to terminate.