Julia Ann ALMARAZ and Eugene M. Guerrero, Relators,

v.

The Honorable Eugene C. WILLIAMS, Respondent.

No. 04–83–00607–CV.

Court of Appeals of Texas, San Antonio.

April 25, 1984.

Ray Leach, Legal Aid Ass'n, Donald L. Bayne, Office of Robert Ritter, San Antonio, for relators.

Victor O. Enriquez, Raul Guerra & Associates, San Antonio, for respondent.

Before CADENA, C.J., and TIJERINA and DIAL, JJ.

## OPINION

TIJERINA, Justice.

This is an original mandamus proceeding. Relators, Julia Ann Almaraz and Eugene M. Guerrero, seek a writ of mandamus to compel Honorable Eugene C. Williams to vacate his order denying the relators' petition for writ of habeas corpus for posses-

sion of their daughter Jennifer Leann Almaraz. The writ is conditionally granted.

Relators Almaraz and Guerrero established a common-law marriage around January 1, 1979. Jennifer, Almaraz' third child was born on September 8, 1982. In January of 1983 the relators separated. In mid February of 1983, Julia Almaraz allowed Margarita and Salvador Perez to take possession of her daughter, Jennifer. The parties agreed that the Perezes could adopt Jennifer. On March 4, 1983, the Perezes took Almaraz to their attorney for the purpose of having Almaraz execute a voluntary affidavit relinquishing her parental rights in the child. The affidavit stated that the father of the child was unknown. The Perezes filed suit on the same day that the affidavit was signed for termination of parental rights and adoption of the child. Two weeks after she signed the affidavit, Almaraz told Guerrero for the first time that the Perezes had custody of Jennifer.

The procedural facts that lead to this writ of mandamus are as follows:

1. On April 11, 1983, the Perezes obtained a judgment for termination of parental rights and adoption.

2. Almaraz and Guerrero filed an application for writ of habeas corpus on May 6, 1983.

3. The writ was denied at a hearing on May 12, 1983. It was at this hearing that relators learned of the decree obtained by the Perezes on April 11th terminating their parental rights in Jennifer.

4. On May 27, 1983, Almaraz and Guerrero filed suit attacking the Perezes April 11, 1983 decree of termination by seeking a declaratory judgment that the prior order was void on due process grounds and alternatively, requesting a new trial by bill of review on grounds of extrinsic fraud.

5. Contingent on a favorable result on either ground, relators also request-

ed a writ of habeas corpus compelling the child's immediate return.

6. The Perezes were both personally served with citation on June 1, 1983 and copies of the petition were also sent by certified mail to the Perezes' attorney of record.

7. The Perezes failed to file an answer within the prescribed time period and on July 8, 1983, Almaraz and Guerrero were granted a default judgment. The judgment: a) declared the April 11 decree void, b) granted the bill of review, c) granted the writ of habeas corpus, and d) issued a writ of attachment ordering the immediate return of Jennifer to the relators.

8. On the same day, July 8, the writ of attachment was served on the Perezes who refused to turn over the child to the deputy sheriff.

9. On July 20, 1983, the Perezes moved for a new trial that was orally granted in part by the court on July 21. However, no order granting the new trial was ever reduced to writing and signed by the trial judge. The Perezes' motion for new trial was therefore overruled by operation of law on September 27, 1983. TEX.R.CIV.P. 329b(e).[1]

10. Before the expiration of the motion for new trial, and under the mistaken belief that a new trial had been granted, the Perezes consolidated their earlier suit for termination and adoption with relators' bill of review, and filed amended pleadings. Almaraz and Guerrero obtained visitation rights under a court order allowing them to take possession of Jennifer for four days and nights every other week, so long as the cause remained pending.

11. On September 16, 1983, trial by jury was re-set by agreement for October 26, 1983.

---

**1.** Attorney Victor O. Enriquez was not counsel for the Perezes at the earlier proceedings. His representation was limited to this appeal and the new suit for termination.

12. On October 24, 1983, relators filed a motion to dismiss and renewed their application for writ of habeas corpus on the grounds that the trial court lacked jurisdiction to alter the judgment signed on July 8, 1983.

13. On October 26, 1983, after relators' motion to dismiss was granted, the Perezes filed a completely new suit for involuntary termination and adoption and obtained *ex parte* restraining orders against the relators, while setting a hearing on the request for temporary injunctive relief for October 28th.

14. At the October 28, 1983 hearing, the Honorable Eugene C. Williams, Respondent, agreed to hear both the writ of habeas corpus and the temporary orders together.

15. Following a two day hearing, Judge Williams denied the Almaraz and Guerrero application for writ of habeas corpus based on the finding that "it is in the best interest of the child" that Jennifer remain in the custody of the Perezes. The order was signed November 7, 1983.

Almaraz and Guerrero contend that the judge breached his statutory duty by (1) denying their application for writ of habeas corpus because they had a clear right to exclusive possession of the child under a prior court order (2) failing to disregard the allegedly pending suit affecting the parent-child relationship, in direct contradiction to § 14.10,[2] and (3) by entering temporary orders restricting relators' access to and possession of the child. We agree.

■■■ Relators sought an application for writ of habeas corpus for the return of their daughter Jennifer, under two alternative theories of § 14.10 of the Family Code. These provisions are:

§ 14.10 Habeas Corpus

(a) If the right to possession of a child is presently governed by a court order, the court in a habeas corpus proceeding involving the right to possession of the child shall compel return of the child to the relator if and only if it finds that the relator is presently entitled to possession by virtue of the court order.

\* \* \* \* \* \*

(e) If the right to possession of a child is not governed by a court order, the court in a habeas corpus proceeding involving the right of possession of the child shall compel return of the child to the relator if, and only if, it finds that the relator has a superior right to possession of the child by virtue of the rights, privileges, duties, and powers of a parent as set forth in Section 12.04 of this Code.

Both of these subsections require the judge to grant a writ of habeas corpus once relators have demonstrated their bare legal right to possession of the child. *Greene v. Schuble*, 654 S.W.2d 436, 438 (Tex.1983). The issuance of the writ should be automatic, immediate, and ministerial. *Armstrong v. Reiter*, 628 S.W.2d 439, 440 (Tex. 1982). The judgment signed on July 8, 1983, granted Almaraz and Guerrero a writ of habeas corpus and a writ of attachment for Jennifer based on a necessary finding that both relators are the natural parents of the child. Based on the default judgment, the writ of habeas corpus ordering the return of the child is a prior court order governing the right to possession of the child. *Whatley v. Bacon*, 649 S.W.2d 297, 300 (Tex.1983).

■■■ The Legislature has provided that obedience to existing court orders shall be compelled by habeas corpus proceedings. *Saucier v. Pena*, 559 S.W.2d 654, 656 (Tex. 1977); *Standley v. Stewart*, 539 S.W.2d 882, 883 (Tex.1976). The general rule is that upon proof of the prior order and absent dire emergency, the writ should be granted. *McElreath v. Stewart*, 545 S.W.2d 955, 958 (Tex.1977). The right to possession may not be relitigated in the habeas corpus hearing; the relators are entitled to an issuance of the writ immediately on a showing of their right to custody. *Strobel v. Thurman*, 565 S.W.2d 238,

**2.** All statutory references are to TEX.FAM. CODE ANN. unless otherwise indicated.

239 (Tex.1978). Further, mandamus is a proper remedy to compel enforcement of the relators' right to possession. *Lamphere v. Chrisman,* 554 S.W.2d 935, 937 (Tex.1977); *Saucier, supra.*

■ The Perezes contend that the order of Judge Williams is nevertheless sustainable under Subsection (c) of § 14.10 which reads:

(c) The court may issue any appropriate temporary order if there is a serious immediate question concerning the welfare of the child.

But it is apparent from the face of the order that the judge did not invoke this subsection. His order does not purport to rest upon, and there is no finding with respect to, a serious immediate question concerning the welfare of the child. It recites only "that it is in the best interest of the child, JENNIFER LEANN ALMARAZ, that she remain in the custody and control of the Respondents, SALVADOR P. PEREZ and MARGARITA A. PEREZ," for which reason the relators' application for writ of habeas corpus was denied. *Saucier, supra.*[3]

It is assumed that Judge Williams will vacate his order denying relators' petition for habeas corpus and that he will issue the requested writ. A writ of mandamus will issue only if he declines to do so.

DIAL, Justice, dissenting.

I respectfully dissent. I cannot agree with the majority that the default judgment granted to petitioners automatically entitles them to the issuance of a writ of habeas corpus for the child Jennifer under section 14.10(a) of the Family Code. Further, I believe the trial court was justified in denying the petitioners' request for a writ of habeas corpus and granting the Perezes' request for temporary orders

pending the outcome of the new suit for involuntary termination of parental rights and adoption filed October 26, 1983, as authorized by section 14.10(f) of the Family Code.[1] By its decision, this Court adopts the policy that the finality of judgments should prevail over the policy, enunciated by the legislature in the Texas Family Code, that the best interest of the child should be paramount in any suit affecting the parent-child relationship. In this respect, the only hearing in which evidence was presented, and made part of the record before us, concerning the best interest of the child was the one held by Judge Williams on October 26, 1983. Unfortunately, the temporary orders predicated on this one and only hearing have been dissolved by this Court on the claim of a habeas corpus based on a default judgment.

In *C v. C,* 534 S.W.2d 359, 361 (Tex.Civ. App.—Dallas 1976, no writ) the court held that the best interest of children is the primary concern of the court and that ordinary procedural rules should not be strictly adhered to by the trial court where the best interest of children is concerned. *Leithold v. Plass,* 413 S.W.2d 698, 701 (Tex.1967); *Boriack v. Boriack,* 541 S.W.2d 237, 242 (Tex.Civ.App.—Corpus Christi 1976, writ dism'd); *In the Interest of Herd,* 537 S.W.2d 950, 952 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.); *Brillhart v. Brillhart,* 176 S.W.2d 229, 230 (Tex.Civ.App.—Amarillo 1943, writ ref'd w.o.m.).

The default judgment granted the petitioners resulted when the Perezes and their attorney failed to answer the bill of review filed by Almaraz and Guerrero. The default judgment reads "the Court considered Plaintiffs' motion for judgment by default and took evidence on the relief requested by Plaintiffs in their original petition." We have no record before us as to the evidence

**3.** The dissent fails to recognize the Supreme Court holding in *Saucier v. Pena,* 559 S.W.2d 654 (Tex.1977).

**1.** TEX.FAM.CODE ANN. § 14.10(f) (Vernon Supp.1984) reads:
The court shall disregard any motion for temporary or permanent adjudication relating

to the possession of the child in a habeas corpus proceeding brought under Subsection (e) of this section unless at the time of the hearing an action is pending under this subtitle, in which case the court may proceed to issue any temporary order as provided by Section 11.11 of this Code.

presented at the default judgment. But in light of the Supreme Court holding in *In the Interest of G.M.*, 596 S.W.2d 846, 847 (Tex.1980), I cannot believe the Supreme Court would apply the finality of judgment rule as a bar in this particular case. The Supreme Court held that a clear and convincing standard of proof was required in termination cases. The Court noted that "termination is a drastic remedy and is of such weight and gravity" that due process required a burden of proof greater than a preponderance of the evidence in involuntary termination cases. As Associate Justice Akins argued in *Joiner v. Vasquez*, 632 S.W.2d 755 (Tex.App.—Dallas 1981, writ ref'd n.r.e.), *cert. denied*, —— U.S. ——, 104 S.Ct. 422, 78 L.Ed.2d 357 (1983) (on motion for rehearing, Akins, J. dissenting):

> In light of the Supreme Court's strong expression with respect to the proof required in an involuntary termination case, I cannot believe that the Supreme Court would endorse application of the doctrine of res judicata to preclude a full hearing to determine the best interest of the children in a termination case, especially in a case such as this where no evidence to support the termination decree has ever been adduced.

632 S.W.2d at 764.

The same concerns expressed by the Dallas Court are also evident in this case. After the termination of parental rights of the respondent Almaraz, a bill of review was requested. Because the Perezes and their attorney did not attend the hearing, a default judgment was entered against them. In their attempt to remedy the situation, the Perezes filed a motion for new trial which was orally granted by the trial judge. On the mistaken belief that the orally granted motion for new trial was good, the Perezes proceeded to prepare for a full hearing on the termination of parental rights. The motion for new trial, never having been reduced to writing, was overruled by operation of law barring the Perezes from the one chance for a hearing where the best interests of the child Jennifer could finally be determined. Thus have procedural rules and a counsel remiss in his duty to his clients, prevented the Perezes from defending their right to possession of Jennifer as adoptive parents.

The purpose and intention of the amendments to section 14.10 of the Family Code was to clarify and modify some of the requirements and procedures for obtaining a writ of habeas corpus after an alleged child-snatching. The Legislature intended that the statute prevent any use of self-help by a parent who was not given lawful custody of the child. Solender, *Family Law: Parent and Child*, 32 SW.L.J. 141, 143 (1978). The amendments attempted to prevent children from being bounced back and forth between their divorcing parents. Once custody of a child had been determined, and a court order issued, parents would no longer be allowed to relitigate custody in a habeas corpus proceeding under section 14.10.

Securing stable homes and supportive families for children is a primary concern of the courts and legislature, and anything which unnecessarily undermines the validity of the adoptive procedure should be considered detrimental to the best interests of the children. Solender, *Family Law: Parent and Child*, 31 SW.L.J. 133, 151 (1977). This is obviously what Judge Williams had in mind when he denied the Almaraz and Guerrero request for a writ of habeas corpus based on the default judgment. The trial judge heard the evidence, knew that the Perezes had failed to appear at the July 8, 1983, hearing that resulted in the default judgment, knew that they had requested and had been orally granted a new trial, and knew that the pending suit for termination of the Perezes' right to Jennifer would soon be heard. So rather than shuttle the child again, he decided to leave the child with the adoptive parents and appointed the natural mother temporary possessory conservator, maintaining the status quo while the parties awaited the termination hearing. Clearly Judge Williams took the Legislature at its word; that the main concern in any suit involving the parent-child relationship is the best interest of the child.

The case most factually similar to our present case is *In the Interest of Stuart,* 544 S.W.2d 821 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.). In *Stuart,* the natural father filed for a writ of habeas corpus seeking the return of his daughter after his release from prison. The father's brother, the child's uncle, had possession of the child without benefit of a court order for 5 years. In response to the natural father's request for a writ of habeas corpus, the uncle (1) answered the writ of habeas corpus, (2) filed a petition to terminate the natural father's parental rights, (3) filed for adoption, and (4) requested to be appointed managing conservator. The natural father filed a general denial to the uncle's suit. The trial court denied the father's petition for habeas corpus and appointed the uncle managing conservator. The father was granted visitation rights as temporary possessory conservator, pending further orders of the court. The order did not dispose of the petition for termination of parental rights and custody. The court in *Stuart* stated:

> At the time of the hearing on the petition for a writ of habeas corpus there was pending a suit which would affect the parent-child relationship brought under sec. 11.01, et seq. of the Family Code. The custody of the child is presently under an order for temporary managing conservatorship issued out of *that* proceeding, as specifically authorized by sec. 11.11 of the Code. We believe such a proceeding is the type contemplated by sec. 14.10(f) of the Family Code.

544 S.W.2d at 823.

Clearly, under the record in *Stuart* as in our present case, the trial court was justified in its implied finding that the best interest of the child would be served by leaving the custody of the child with the uncle pending a hearing and determination of the issues of termination of appellant's parental rights to the child and adoption. *Id.* at 824. The majority hold that because Judge Williams did not use the magic words "a serious immediate question concerning the welfare of the child," the order cannot be upheld under section 14.10(c).

Judge Williams' order recites only "that it is in the best interest of the child." Had the order tracked the language of 14.10(c) and given the evidence presented at the hearing, I have no doubt that the majority would have denied the writ of mandamus.

The Perezes are being made to suffer the loss of their adoptive child due to the irresponsibility on the part of their various lawyers. To permit the future of the child to be determined by the lack of diligence of one of the parties or their attorney would ignore the court's primary responsibility to protect the child and make its decision based on the best interests of the child. *C v. C, supra* at 362; *Baggett v. State,* 541 S.W.2d 226 (Tex.Civ.App.—Tyler 1976, no writ). The trial judge realized this, and acted accordingly. I believe that the trial court was correct in denying petitioners request for a writ of habeas corpus pending the hearing on termination of parental rights. Therefore, I would deny the writ of mandamus.