Ronald Gene PETRU, Relator,

v.

The Honorable Ogden BASS, Judge of the 300th District Court of Brazoria County, Respondent.

No. A14–89–1075–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 10, 1990.

Richard A. Tindall, Houston, for relator.

Brian Wunder, Houston, for respondent.

Before J. CURTISS BROWN, C.J., and JUNELL and MURPHY, JJ.

OPINION

MURPHY, Justice.

In this original proceeding, Ronald Gene Petru, relator and natural father of the minor child, seeks a writ of mandamus directing the respondent, Honorable Ogden Bass, to set aside his prior order and to grant a writ of habeas corpus ordering Robert Duane Armstrong and Oletta Faye Armstrong to surrender the minor child to relator. We now conditionally grant the writ.

Although relator claims that the minor child lived with his natural parents, relator and Patricia Petru, until the death of Patricia Petru in April 1988, the record reflects that the natural parents gave temporary, legal guardianship of the child to the maternal grandparents, Robert and Oletta Armstrong, on August 28, 1987. All parties agree that, during the six months prior to her death, Patricia Petru, relator, and the minor child lived with the Armstrongs. For six months following the mother's death, the child and relator allegedly continued to live with the Armstrongs and then relator obtained another residence. Relator claims that since obtaining another residence, the Armstrongs have refused to relinquish possession of the minor child.

The trial court docket sheet reflects that the Armstrongs filed an original petition seeking custody of the child on August 21, 1989. On the same date, the trial court issued a temporary restraining order, effective until August 31, 1989, granting the Armstrongs possession of the child and restraining relator from interfering with that possession. On August 29, 1989, relator filed his application for writ of habeas corpus. The trial court held a hearing on both causes on August 31, 1989. During this hearing, respondent interviewed the minor child. Following this interview, the respondent entered an order on September 1, 1989 denying relator's application for writ of habeas corpus. On this same date, respondent entered a temporary order appointing the Armstrongs as temporary managing conservators and appointing relator the temporary possessory conservator.

In his findings of fact and conclusions of law filed on December 12, 1989, respondent found that no court order existed on August 29, 1989 that entitled relator to possession of the child, but that orders did exist granting possession to the Armstrongs. Because no court order existed granting possession of the child to relator, respondent concluded that relator did not meet the requirements of TEX.FAM.CODE ANN. § 14.10(a) or (e) and thus, denial of relator's application for writ of habeas corpus was proper.

TEX.FAM.CODE ANN. § 14.10[1] governs in habeas corpus proceedings involving possession of a child. Sections 14.10(a) and (e) impose a mandatory duty upon the trial judge to grant a writ of habeas corpus once a relator establishes a legal right to possession of the child. See Armstrong v. Reiter, 628 S.W.2d 439, 440 (Tex.1982) (Orig. Proceeding); Almaraz v. Williams, 673 S.W.2d 923, 925 (Tex.App.—San Antonio 1984) (Orig.Proceeding). Section 14.10(a) requires the trial court to compel the return of a child to relator if a prior order exists governing the possession of the child and this order indicates that relator is entitled to possession of the child.[2] Section 14.10(e) requires the trial court to return the child to the relator if no prior order governing possession of the child exists and if the relator has a superior right to possession of the child under § 12.04. Under § 12.04, a parent has a superior right

---

**1.** TEX.FAM.CODE ANN. § 14.10 was amended effective September 1, 1989. The amended version applies only to habeas corpus proceedings filed on or after September 1, 1989. Because the instant application for writ of habeas corpus was filed on August 29, 1989, we must apply the version in effect at the time of filing of the application, which is TEX.FAM.CODE ANN. § 14.10 (Vernon 1986).

**2.** Section 14.10(a) provides:
  (a) If the right to possession of a child is presently governed by a court order, the court in a habeas corpus proceeding involving the right to possession of the child shall compel return of the child to the relator if and only if it finds that the relator is presently entitled to possession by virtue of the court order.
  TEX.FAM.CODE ANN. § 14.10(a) (Vernon 1986).

to possession of a child. *See* TEX.FAM.CODE ANN. § 12.04 (Vernon 1986). Thus, absent a prior order, the trial court should have granted relator's application because relator, as the natural father, had a superior right to possession of the child. Although relator claims that no prior order exists and that § 14.10(e) applies, the respondent entered a temporary order, prior to the filing of the application for writ of habeas corpus, restraining the relator from interfering with the Armstrong's possession of the child. Therefore, we must determine whether this temporary restraining order constitutes a "prior court order" under § 14.10.

The court in *Armstrong v. Reiter*, 628 S.W.2d 439 (Tex.1982) addressed a similar question. In *Armstrong*, the natural parents were separated and the child lived with his natural father and a woman, Sherri Pollan. *Id.* When the natural father died, Pollan filed an application to be appointed the legal guardian of the child. *Id.* at 440. The county court granted Pollan's application. *Id.* Upon learning of Pollan's attempts to gain custody of her son, the natural mother filed an application for writ of habeas corpus. *Id.* at 439–40. The trial court denied the application because of the prior court order appointing Pollan as the child's legal guardian. *Id.* at 440. The Texas Supreme Court disagreed with this reasoning and first noted that the natural mother had neither signed an affidavit relinquishing her parental rights, nor had her rights ever been terminated by court order. *Id.* The court also stated:

> After Debbie established she was Christopher's natural mother and there were no outstanding orders *terminating her parental rights*, she was entitled to have the writ of habeas corpus issue. The granting of the writ should have been "automatic, immediate, and ministerial."

*Id.* (citations omitted) (emphasis added). As for the order appointing Pollan as legal guardian, the court held that this order could not terminate the natural mother's parental rights because a county court has no jurisdiction to enter orders affecting the parent-child relationship. *Id.* Thus, in cases where a natural parent seeks habeas corpus relief, *Armstrong* holds that a "prior court order" under § 14.10 is a court order terminating parental rights. *See id.*

In the instant case, the only court order in effect at the time relator filed his application for habeas corpus relief was a temporary restraining order. No court orders existed terminating relator's parental rights and relator had never signed an affidavit relinquishing his parental rights. Thus, under *Armstrong* the temporary restraining order did not constitute a prior order under § 14.10. Absent a prior court order, § 14.10(e) is applicable and requires the trial court to grant the writ in favor of a relator who has a superior right to possession of the child. *See* TEX.FAM.CODE ANN. § 14.10(e) (Vernon 1986); *Armstrong*, 628 S.W.2d at 440. Because relator in the case at bar is the child's natural father, he has a superior right to possession of the child. *See* TEX.FAM.CODE ANN. §§ 12.04, 14.10(a) (Vernon 1986). Accordingly, respondent had a mandatory duty to grant relator's application for writ of habeas corpus. *See Armstrong*, 628 S.W.2d at 440.

A writ of mandamus will issue only if respondent fails to vacate his prior order and to grant relator's application for writ of habeas corpus.